■ FRANK GEISEL, an Infant, by His Mother and Natural Guardian, BERNICE GEISEL, et al., Respondents, v FLUSHING HOSPITAL AND MEDICAL CENTER et al., Defendants and Third-Party Plaintiffs-Appellants. PAUL ELINSON, Third-Party Defendant-Respondent. (And Two Other Third-Party Actions.)—In a medical malpractice action, defendants appeal from (1) stated portions of an interlocutory judgment of the Supreme Court, Queens County, entered May 24, 1978, which, *inter alia,* granted a new trial to the infant plaintiff on the issue of damages and dismissed the third-party complaint as against Paul Elinson and (2) an order of the same court, dated May 12, 1978, which denied their application for approval of an infant's compromise. Interlocutory judgment modified, on the law, by deleting the first, third, fifth and sixth decretal paragraphs thereof. As so modified, interlocutory judgment affirmed insofar as appealed from and, as between plaintiffs and defendants, action severed and new trial granted as to liability and damages, with costs to abide the event. Costs are awarded to third-party defendant Elinson, payable by defendants. Appeal from the order dismissed in light of the determination of the appeal from the interlocutory judgment. On April 27, 1974 the infant plaintiff, Frank Geisel, fell through a skylight on the roof of a building where he had gone to retrieve a ball. At the time he was wearing blue cotton corduroy pants. As a result of the fall he

suffered a severe laceration on the inside of his right thigh. He was taken to the Flushing Hospital and Medical Center, and was treated in the emergency room by Dr. Harrish Chander. The injury was approximately 3½ inches in length and ¼ to ½ inch deep and, according to Chander, it extended up to, but not into, the fascia, which is the membrane covering the muscles, blood vessels and nerves. Chander did not observe any tear in the fascia and did not see any foreign object inside the wound. He cleaned and sutured the wound under local anesthesia and administered a tetanus vaccination. The infant was given a prescription for antibiotics and released from the hospital. The infant was thereafter treated by his family's physician, Paul Elinson. On April 29, 1974 the infant was admitted to Parsons Hospital since the injury was not healing properly. Upon admission to Parsons Hospital the infant was in a dehydrated condition, his white blood cell count was abnormally high, and he was running a fever. Elinson ordered X rays, and they were taken under the supervision of Dr. Rocco Bevilacqua. The X rays did not reveal the presence of a foreign object within the wound. The infant was treated with a general antibiotic to combat the infection present at the sutured area. Tests taken indicated that the infection was not abating and a specific antibiotic was administered. Thereafter the infant's body temperature dropped, indicating, along with other improvements, that any infection had been cured. As a result, the infant was discharged on May 11, 1974. The injury, however, still did not heal and the infant suffered pain and discomfort, ran a low-grade fever and walked with a limp. On July 19, 1974 the infant was readmitted to Parsons Hospital, where Bevilacqua again took X rays. He thereafter concluded that a foreign object might be present within the wound. At this point a surgeon, Dr. Charles Liberali, was consulted, and he recommended exploratory surgery under general anesthesia. Surgery was performed and foreign bodies, including a piece of blue cotton corduroy material, measuring approximately 1¼ by 1¾ inches, were removed. The wound then healed properly and the infant was discharged from the hospital on July 31, 1974. Within one year he was no longer limping and was free from pain. However, he was left with two scars, one from the original injury and one from the surgery required to remove the foreign matter. The case was tried before a jury and, at the close of all of the evidence, Trial Term granted the motion of the third-party defendant Elinson to dismiss Flushing's and Chander's third-party complaint against him. The court also granted, without opposition, the motions of third-party defendants Bevilacqua and Parsons Hospital to dismiss the third-party complaints against them. The only claims submitted to the jury were those of the plaintiffs against Flushing and Chander. The jury returned a verdict in favor of the plaintiffs, awarding the infant $500 in damages and his parents $3,047.25 for medical expenses. The court then granted a motion to set aside the damages award in favor of the infant plaintiff as inadequate, and directed a new trial on that question only. Thereafter a tentative settlement was arrived at compromising the infant's claim for $5,000. However, the court refused to approve the compromise and ordered the matter restored to the Trial Calendar. The appellants concede that the trial court properly set aside the verdict on damages with respect to the infant plaintiff. However, they contend that a new trial on the liability question is also required. We agree with this contention. Either the damages awarded the infant should have been greater or there should have been a finding of no liability. Therefore, the jury's decision constituted a compromise verdict. If the initial treatment of the infant plaintiff constituted malpractice, the complications which were the direct product of that

treatment could not possibly be compensated by an award of $500. The infant suffered pain and discomfort when the wound would not heal, underwent surgery with the attendant risk present from the use of general anesthesia, and now bears an additional scar as a result of that operation. The damages sustained would justify a larger award if liability were established. It appears that the jury members compromised their views on the liability question in exchange for agreement as to damages (see *Parlato v Semmes Motors,* 38 AD2d 844). Hopkins, J. P., Damiani, O'Connor and Mangano, JJ., concur.