OPINION OF THE COURT
Arnold Guy Fraiman, J.
In this products liability case by the daughter of a woman who ingested DES during pregnancy, plaintiff moves for partial summary judgment against defendant Eli Lilly and Company. Lilly cross-moves for an order vacating a prior order of this court which prohibited counsel from communicating with the jurors in Bichler v Lilly & Co. (Supreme Ct, Bronx County, April 24, 1980, No. 15600/74) and also seeks leave to depose two of the jurors in the Bichler case. Plaintiff, on the motion-in-chief, relying upon the doctrine of collateral estoppel, seeks partial summary judgment with respect to those issues which she contends were resolved by certain special interrogatories answered by the Bichler jury along with its general verdict. It is contended that with respect to these issues, which *352 allegedly are also present in the instant case, Lilly is barred by collateral estoppel from relitigating them.
Lilly contends, inter alia, that no aspect of the Bichler verdict may be relied upon for the purposes of collateral estoppel because it was a compromise verdict. It is to establish that claim that it now seeks by its cross motion to vacate the stay heretofore entered by the court and to depose certain of the Bichler jurors.
The court at this time will consider only Lilly’s cross motion and will dispose of the motion-in-chief at a later date. The underlying legal premise upon which the cross motion rests, as noted, is that collateral estoppel should not be available where the first verdict was a compromise verdict. To support this premise Lilly relies upon dictum contained in Schwartz v Public Administrator of County of Bronx (24 NY2d 65, 72) to the effect that one of a number of factors to be considered in determining whether a party has had his day in court so as to estop him from relitigating an issue previously resolved is whether there are “indications of a compromise verdict”.
This is not the first time that Lilly has contended that the Bichler verdict was a compromise verdict. Lilly originally raised this issue as a basis for setting the Bichler judgment aside on its unsuccessful appeals both to the Appellate Division and the Court of Appeals. In each forum, the issue was fully briefed and argued by Lilly’s counsel, and both appellate courts unanimously rejected the contention. Lilly nevertheless contends that it is not foreclosed from establishing that there was a compromise verdict in Bichler because, it stresses, it is not seeking to set aside the Bichler verdict, but rather is seeking to prevent its use for the purposes of collateral estoppel. Moreover, Lilly now submits on its cross motion an affidavit by an attorney who apparently interviewed several of the Bichler jurors after the trial. This affidavit was not before the appellate courts and Lilly contends that it lends additional support to its contention that the Bichler verdict was the result of compromise and that it should be permitted to pursue the matter further by deposing the jurors themselves on this question.
*353 The fact that Lilly is not seeking to set the Bichler verdict aside does not alter the fact that it is now res judicata that that verdict was not the result of a compromise. There is nothing in the Schwartz decision (supra), nor in logic, to suggest that a compromise verdict which would preclude the applicability of collateral estoppel is something less than a compromise verdict which would require the setting aside of a judgment based upon that verdict. In each instance the taint consists of conduct by the jurors which renders their verdict untrue and unjust, and therefore a nullity in the one case, and one not to be relied upon in the other.
Thus, the remaining issue is whether Lilly now has new evidence which would warrant the court to authorize it to pursue the matter further by deposing two of the Bichler jurors. The material not before the appellate courts is contained in an affidavit of John Deveney, a former associate of Lilly’s counsel. Mr. Deveney states that after the trial ended he interviewed three of the Bichler jurors and that one of them, a Mrs. Bowman, allegedly told him that she and another juror agreed to vote for liability if the other jurors would reduce the size of the verdict they were considering, and that this was done. Apparently, Mrs. Bowman was unwilling to make a sworn statement to this effect. Mr. Deveney’s affidavit is silent as to whether the other two jurors he interviewed corroborated Mrs. Bowman’s oral statement.
This is the slender reed upon which Lilly seeks to contravene the long-established rule that a juror is not competent to give evidence impeaching his own verdict. (Alford v Sventek, 53 NY2d 743.) This is based upon one of the most deeply engrained principles in our judicial system — the sanctity of jury deliberations. Its rationale was expressed by the United States Supreme Court in McDonald v Pless (238 US 264, 267-268), where the court stated as follows: “[L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be *354 harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation — to the destruction of all frankness and freedom of discussion and conference.” The rule has been the law in New York since 1843. (Clum v Smith, 5 Hill 560.)
While the absolute prohibition against the use of a juror’s testimony to impeach his verdict has been modified in recent years to permit testimony by a juror with respect to outside influence upon his deliberations (People v Brown, 48 NY2d 388; People v De Lucia, 20 NY2d 275), no exception has been made with respect to juror testimony concerning events inside the jury room. In People v De Lucia (supra, p 278), the Court of Appeals reiterated the rationale for prohibiting testimony by jurors about their deliberations: “The policy reason for the present rule is, of course, that we do not wish to encourage the posttrial harassing of jurors for statements which might render their verdicts questionable. With regard to juryroom deliberations, scarcely any verdict might remain unassailable, if such statements were admissible. Common experience indicates that at times articulate jurors may intimidate the inarticulate, the aggressive may unduly influence the docile. Some jurors may ‘throw in’ when deliberations have reached an impasse. Others may attempt to compromise. Permitting jurors to testify regarding such occurrences would create chaos.” (Emphasis added.)
The fact that Lilly is not seeking to depose the jurors in order to set their verdict aside, but rather seeks to depose them in order to prevent their verdict’s use for collateral estoppel purposes, is a meaningless distinction. The effect upon the jury system of permitting the jurors to be deposed is the same: it would result in “the destruction of all frankness and freedom of discussion and conference.”
Nor is the dictum in Schwartz v Public Administrator (supra) regarding the collateral estoppel effect of a judgment based on a compromise verdict inconsistent with the juror incompetence rule. The invalidity of a compromise *355 verdict was recognized long before Schwartz. (See, e.g., Van Der Harst v Koenig, 249 App Div 235; Wiegand v Fee Bros. Co., 73 App Div 139.) But the determination of whether or not there was a compromise verdict has never been made by deposing the jurors themselves. Instead, it has been made by drawing inferences from external factors such as inconsistencies between the verdict and the evidence (Geisel v Flushing Hosp. & Med. Center, 70 AD2d 927), the manner in which the verdict is announced (Wiegand v Fee Bros. Co., supra), or the size of the verdict (Van Der Harst v Koenig, supra). It was obviously this method of determining a compromise verdict that Judge Keating had in mind in the Schwartz case (supra, p 72) when he referred to “indications of a compromise verdict”, i.e., external indication, rather than testimony by the jurors themselves.
Even if the court were to conclude that the rule against deposing jurors concerning their deliberations was not applicable to this case, for some reason the court cannot now perceive, it would nevertheless deny Lilly’s motion because of the character of its evidence submitted in support of the motion. As noted, Lilly is not seeking to depose certain of the B ichler jurors on the basis of sworn, or even unsworn, written statements given by the jurors themselves. Indeed, the motion was apparently necessitated by the refusal of any of the jurors voluntarily to be deposed or to furnish an affidavit. Rather, Lilly relies solely upon a hearsay affidavit of an attorney who states what one of three jurors he interviewed allegedly told him. Before a court will permit the involuntary deposition of a juror under the outside influence rule, it must be presented with “ ‘substantial if not wholly conclusive evidence’ ”. (King v United States, 576 F2d 432, 438, cert den 439 US 850, quoting United States v Dioguardi, 492 F2d 70, 80, cert den 419 US 873.) A fortiori, the same or more rigorous standards must be met in the instant case. Lilly’s evidence falls far short of this exacting standard. (See King v United States, supra.)
For all the foregoing reasons the cross motion is denied and the stay heretofore entered by the court is continued.
*356 The court is aware that Judge Knapp of the United States District Court has recently held in a similar case that the B ichler jurors may be deposed to determine if their verdict was based upon a compromise. (Milks v Lilly & Co. US Dist Ct, SDNY, July 7, 1982, No. 79 Civ 3681 [WK].) However, while the court holds Judge Knapp in great esteem, it respectfully disagrees with his determination and declines to follow it. As Judge Knapp noted in his decision, since the case before him was a diversity case, he was sitting as a New York State trial court. Where decisions of nisi prius courts are in conflict, the appropriate forum for the ultimate resolution of the conflict is the Appellate Division.