MORRIS GOLDSTEIN et al., Appellants, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Respondents, et al., Defendants.

First Department, May 17, 1983

**APPEARANCES OF COUNSEL**

*Julian Kaplan* of counsel (*Jessel Rothman, P. C.,* attorney), for appellants.

*William E. Hegarty* of counsel (*Thomas J. Kavaler, Vincent E. Gentile* and *Lisa Schilit* with him on the brief; *Cahill Gordon & Reindel* and *Ernest J. Williams,* attorneys), for Consolidated Edison Company of New York, Inc., respondent.

**OPINION OF THE COURT**

KUPFERMAN, J. P.

Plaintiffs, Morris and Ruth Goldstein, appeal from the denial by Special Term of their motion for partial summary judgment against defendant Consolidated Edison Co. (Con Ed). By that motion, plaintiffs sought an order precluding Con Ed from relitigating the issue of whether it was grossly negligent in failing to prevent the interruption of electrical service during the 1977 blackout, and setting the matter down for an inquest to assess plaintiffs' damages. Special Term should have granted the motion to the extent

of precluding Con Ed from again litigating the gross negligence issue, reserving all other matters for trial.

On the morning of July 14, 1977, plaintiff Morris Goldstein allegedly sustained personal injuries when he slipped and fell down a darkened stairwell in a co-operative ownership apartment building in The Bronx in which plaintiffs reside and own shares. Plaintiff Ruth Goldstein, his wife, joins her claim for loss of services resulting from her husband's alleged injuries. In addition to Con Ed, the complaint names as defendants the co-operative apartment corporation, its managing agent, and two individual employees of Con Ed. The motion for partial summary judgment, however, is directed solely against Con Ed.

Plaintiffs predicate their motion on a judgment entered after a jury verdict which specifically found as a fact that Con Ed had acted with gross negligence in failing to prevent the blackout. The Court of Appeals affirmed our court's affirmance without opinion of that judgment. (*Food Pageant v Consolidated Edison Co.*, 54 NY2d 167, affg 78 AD2d 1016.) Plaintiffs now invoke the doctrine of offensive collateral estoppel, also called issue preclusion, to give the finding of gross negligence in the *Food Pageant* judgment conclusive effect in this litigation.

Under New York law, for a nonparty to an action which resulted in a judgment to use that judgment offensively in a later action to preclude a party to that judgment from relitigating an issue of fact found adversely to that party in the prior action, a twofold requirement must be met. As the Court of Appeals stated the standard: "New York Law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling." (*Schwartz v Public Administrator of County of Bronx*, 24 NY2d 65, 71.)

In *Schwartz* (*supra*), the Court of Appeals stated further that the burden rests upon the defendant to show that collateral estoppel should not be applied because it did not

have a full and fair opportunity to litigate the issue in the prior action, while the burden is placed on the moving party to show that the issue is identical and was necessarily decided in the prior action. (24 NY2d, at p 73.)

The identity of issue requirement is clearly met. In *Food Pageant* (*supra*), the jury decided that Con Ed was grossly negligent in failing to prevent the blackout. This issue was necessarily decided in that case inasmuch as the jury was instructed that there could be no recovery absent a finding of gross negligence on the part of Con Ed because Con Ed was exempt from liability for ordinary negligence under the terms of its tariff restrictions approved by the Public Service Commission. Though the finding in *Food Pageant* is not dispositive of the Goldsteins' claim, it is certainly decisive of the motion for partial summary judgment. Thus, the issue on this appeal is whether Con Ed had a full and fair opportunity to litigate the gross negligence issue in the *Food Pageant* action so that allowing issue preclusion in this case would not be unjust. On this question, Con Ed has the burden.

The Court of Appeals has set the standard for determining whether a party has had a full and fair opportunity to litigate an issue as requiring: "an exploration of the various elements which make up the realities of litigation. A comprehensive list of the various factors which should enter into a determination whether a party has had his day in court would include such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." (*Schwartz v Public Administrator of County of Bronx*, 24 NY2d, at p 72.)

Of the nine considerations listed above, only "indications of a compromise verdict" even remotely avails Con Ed in its attempt to avoid the conclusive effect of the finding of gross negligence by the *Food Pageant* jury. The *ad damnum* clause in the *Food Pageant* complaint sought $75,000 in damages. Even in light of the enormity of the potential exposure of Con Ed to blackout claims, this is not such an

insubstantial claim that it would not have been vigorously contested. Con Ed certainly foresaw future litigation and had to have been aware that an adverse finding in *Food Pageant* could have collateral effect. The case was tried in Supreme Court, Bronx County, between April 27 and May 9, 1979, and two appeals were taken. Thus, the trial forum of the litigation was a court of record and the extent of the litigation was substantial, indicating the use of initiative. At trial, Con Ed was represented by in-house counsel, and on both appeals had retained a prestigious firm to be of counsel.

There is no allegation of a significant change in the applicable law.

The investigative reports referred to by Con Ed in its argument as not having been part of the record in the *Food Pageant* trial were all released and available at the time of that trial. Therefore, the consideration of "availability of new evidence" is inapplicable inasmuch as Con Ed surely had the opportunity to introduce those investigative reports.

To meet its burden of showing that the *Food Pageant* trial was not a full and fair opportunity to litigate the gross negligence issue, Con Ed refers to the fact that the *Food Pageant* jury awarded exactly half the damages claimed. From this fact alone we are asked to infer that the jury compromised on the issue of whether Con Ed was grossly negligent, despite the fact that the jury unanimously answered affirmatively the specific interrogatories presented by the Trial Justice whether Con Ed was grossly negligent, and, if so, whether such gross negligence proximately caused plaintiff's injuries.

This reduced award of damages by the *Food Pageant* jury is susceptible of other inferences as well. The jury may well have been merciful in light of Con Ed's public responsibility and vast exposure.[*] Food Pageant's claims were $38,000 for food spoilage and $43,000 for lost profits. The jury may have considered plaintiff's claims exaggerated. These sup-

---

[*] We are advised that approximately 285 blackout cases are pending against Con Ed, seeking total damages in excess of $200,000,000.

positions are as plausible as Con Ed's contention, and within the province of the jury. How the jury arrived at the award it did is a matter of conjecture.

In *Strauss v Belle Realty Co.* (Supreme Ct, Queens County, June 24, 1982, No. 9917/79), a blackout case practically identical to the case at bar, Justice BUSCH-MANN, in granting plaintiff's motion for partial summary judgment, aptly described Con Ed's contention that the *Food Pageant* verdict was a compromise on liability as "unsubstantiated speculation". The appeal from that order is currently *sub judice* in the Appellate Division, Second Department, along with a companion case, *Shaid v Consolidated Edison Co.* (Supreme Ct, Queens County, June 7, 1982, No. 3802/78). In *Shaid,* Justice DURANTE denied the plaintiff's summary judgment motion on the ground that factual issues of proximate cause and the scope of defendant's duty required a trial. It is not clear from the decision in *Shaid* whether plaintiff sought only partial summary judgment as in the case at bar or total summary judgment. Nonetheless, Justice DURANTE described Con Ed's argument that the *Food Pageant* verdict was a compromise as "mere speculation".

Con Ed has simply failed to meet its burden of proving that it was denied a full and fair opportunity to litigate the gross negligence issue such that allowing issue preclusion would be unfair because of a compromise verdict, or for any other reason.

In denying the Goldsteins' motion for partial summary judgment, Special Term correctly stated that there existed identity of issue, that the issue was decisive, and that Con Ed had a full and fair opportunity to litigate the issue and did vigorously defend against the *Food Pageant* claim. However, Special Term declined to apply collateral estoppel on the ground that it would be unfair in light of several cases brought in Small Claims Court in which Con Ed was victorious either at trial or at the Appellate Term. Relying on *Vincent v Thompson* (50 AD2d 211) for the rule that collateral estoppel should not be applied in a multiple claimant situation where unfairness would result, Special Term denied the motion. *Vincent v Thompson,* a pharmaceutical products liability case, is inapposite to the case at

bar because, in *Vincent*, the reasons for reversal of the trial court's application of issue preclusion were a lack of identity of issue, and newly discovered evidence.

This case does not present the "multiple plaintiff anomaly" situation. (See Currie, Mutuality of Collateral Estoppel: Limits of the *Bernhard* Doctrine, 9 Stanford L Rev 281, 304; Restatement, Judgments 2d, § 29, subd [4].) Con Ed's victories in cases brought in the Small Claims Part of the New York City Civil Court have no precedential value, nor do they preclude the claimants from bringing an action in Supreme Court on their claims against Con Ed. (See CCA, § 1808.) That section provides that a judgment obtained in Small Claims Part of the New York City Civil Court has *res judicata* effect only up to the amount involved in the action, and "shall not * * * be deemed an adjudication of any fact at issue or found therein in any other action or court."

We are referred to no case tried in a court of record in which a final determination has been made denying recovery to a blackout plaintiff on the ground that Con Ed was not grossly negligent. Thus, whether certain plaintiffs are allowed partial summary judgment on that issue while others are required to prove Con Ed's gross negligence at trial is quite immaterial in terms of the multiple plaintiff anomaly. The blackout litigation simply does not present the situation where a number of plaintiffs have lost their claims by a final adjudication on the merits and then one plaintiff wins and all remaining plaintiffs use the successful plaintiff's judgment to sustain their claims. That kind of injustice, which the United States Supreme Court declared would render issue preclusion inappropriate (see *Parklane Hosiery Co. v Shore,* 439 US 322, 330) is not present where the inconsistent determinations involve only the grant or denial of summary relief to plaintiffs.

In addition to the alleged unfairness of inconsistent determinations among multiple plaintiffs discussed above, Con Ed argues on this appeal that the policies behind issue preclusion would not be served by its application in this case. The argument involves an unfounded contention that issue preclusion is impermissible where issues of comparative fault are present. Con Ed argues that for the jury to be

able to apportion damages fairly it must hear evidence of Con Ed's gross negligence to compare that negligence with any negligence on the part of other parties. This argument is specious inasmuch as it is the effect rather than the quality of the respective acts of negligence which the jury must compare. The jury will be instructed that Con Ed was grossly negligent in failing to prevent the blackout, but that any award made to plaintiffs must be reduced by the proportion of that award which the jury determines is attributable to the negligence of the plaintiffs or other defendants. (See PJI 2:36 [Supp].)

Con Ed further argues in support of its contention that the policy behind issue preclusion, of conserving judicial resources, would not be served by its application in this case, because plaintiffs generally would be discouraged from utilizing statutory joinder devices in multiple claimant litigation. Though it may be so that more cases will be docketed as a result of permitting issue preclusion in multiple plaintiff litigation, the extent of litigation in each case will be reduced thus fulfilling the objective of "discouraging redundant litigation". (See *Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 485.) In *State of Maryland v Capital Airlines* (267 F Supp 298 [applying Federal law]), the court stated after holding the United States estopped from relitigating the negligence of Federal Aviation Authority employees in connection with a mid-air collision: "the court has taken into account not only the right of society to have its courts render justice as inexpensively as possible and the right of each litigant to have his day in court, but also the rights of other litigants who might have to wait to have their day in court because one litigant is allowed to litigate the same issue over and over again." (267 F Supp, at p 304.)

Analogous issues of procedure are present in the plane crash mass disaster litigations and the blackout cases, except that, in the latter, a wider variety of types of injury results, making class action treatment less feasible. However, in both contexts, the rights of large numbers of claimants depend upon an identical issue of negligence *vel non* to be determined from a particular factual setting. In *Hart v American Airlines* (61 Misc 2d 41) the court gave

preclusive effect to a finding made by a Texas court that the airline was negligent in connection with a plane crash in Kentucky. In so holding, the court cited *Schwartz v Public Administrator of County of Bronx* (*supra*) stating that a court should not " 'tolerate a condition where, on relatively the same set of facts, one fact-finder, be it court or jury' may find a party liable while another exonerates him leading to the 'inconsistent results which are always a blemish on a judicial system' " (61 Misc 2d, at p 44).

Nor is Con Ed's reliance on public policy and due process arguments availing. Con Ed argues that public policy considerations weigh against allowing issue preclusion in blackout cases because of the adverse impact on the consuming public of higher electric rates.

The maxim *fiat justitia et ruant coeli* (let justice be done though the heavens fall) may well apply.

On the due process ground, Con Ed argues that allowing issue preclusion here would contravene the policy of fundamental fairness embodied under due process of law. Inasmuch as Con Ed was afforded a full and fair opportunity to litigate the issue of gross negligence, and has failed on this appeal to come forward with the "compelling showing of unfairness" required to justify not giving conclusive effect to the prior finding (see Restatement, Judgments 2d, § 28, Comment *j*; earlier version: Restatement, Judgments 2d, § 68.1, Comment *j* [Tent Draft No. 4] cited with approval in *Gilberg v Barbieri,* 53 NY2d 285, 303, n 3) due process is satisfied.

Accordingly, the order entered in Supreme Court, Bronx County (MERCORELLA, J.), on July 22, 1982, which denied plaintiffs' motion for partial summary judgment precluding Con Ed from relitigating the issue of its gross negligence *vel non* and setting the matter down for an inquest to assess plaintiffs' damages against Con Ed, should be modified, on the law, with costs, to grant so much of plaintiffs' motion as sought to preclude Con Ed from relitigating the gross negligence issue, and otherwise affirmed, and the matter remanded for a trial on the remaining issues including causation and comparative negligence.

SANDLER, J. (dissenting). Let me acknowledge that the conclusion reached by a majority of this court will yield

important practical benefits in permitting a substantial saving of time and expense in the disposition of the multiple lawsuits that followed the blackout of 1977. I do not believe that the result reached is as fair as it is practical, or that it reflects appropriate consideration of several factors that are generally recognized as weighing against the application of issue preclusion in the absence of mutuality. Although Justice KUPFERMAN's able and persuasive opinion accurately states the criteria detailed by the Court of Appeals in *Schwartz v Public Administrator of County of Bronx* (24 NY2d 65) it does not seem to me to apply them to the complex situation presented here with that flexibility in the interest of justice that is the central principle in the application of issue preclusion. (See *Schwartz v Public Administrator of County of Bronx, supra,* at p 73; *Gilberg v Barbieri,* 53 NY2d 285, 293; see, also, Restatement, Judgments 2d, ch 3, topic 2, tit E, Issue Preclusion, pp 249, 250.)

On the tenuous basis of a single judgment for $40,500, entered upon a jury verdict disclosing unmistakable indicia of compromise, in a property damage case which presented no issue as to causation or the negligence of the plaintiff, and in which the jury's resolution of the issue here relied on was directly contrary to determinations by Judges in several small claims actions, the court is sustaining the offensive use of collateral estoppel to preclude the defendant from relitigating the issue of the culpability of its conduct in almost 300 lawsuits involving enormous potential liability, and arising out of widely varying factual circumstances, many of which will present separate and varied issues as to causation and the negligence of plaintiffs. I have been unable to find a single reported decision anywhere in the country in which issue preclusion was sustained under circumstances remotely comparable to those here. (See Mutuality of Estoppel as Prerequisite of Availability of Doctrine of Collateral Estoppel to a Stranger to the Judgment, Ann., 31 ALR3d 1044.)

The basic principles governing the application of issue preclusion in this State were set forth by the Court of Appeals in *DeWitt v Hall* (19 NY2d 141) and *Schwartz v Public Administrator (supra).* Following the leading case of *Bernhard v Bank of Amer. Nat. Trust & Sav. Assn.* (19 Cal

2d 807) the Court of Appeals joined the modern trend, albeit a trend still resisted by many jurisdictions, to eliminate the traditional requirement of mutuality in the application of issue preclusion. Both cases involved vehicular accidents, as to which the number of potential litigants and lawsuits was sharply limited, and both applied issue preclusion in the second of the two lawsuits arising out of each accident.

This appeal represents the first time that an appellate court in this State has been confronted with the proposed application of the principles subscribed to in *DeWitt* and *Schwartz* (*supra*) to the multiple claimant situation. Indeed, the application of those principles to the multiple claimant situation appears to have been addressed throughout the country in a surprisingly limited number of reported decisions, several involving airplane accidents. These decisions disclose divergent results, apparently turning for the most part on the particular circumstances presented in each case, although in part reflecting differences in approach. (See, e.g., *Parklane Hosiery Co. v Shore*, 439 US 322; *United States v United Air Lines*, 216 F Supp 709, affd in part and mod in part *sub nom. United Air Lines v Wiener*, 335 F2d 379, cert dsmd 379 US 951; *State of Maryland v Capital Airlines*, 267 F Supp 298; *Zdanok v Glidden Co., Durkee Famous Foods Div.*, 327 F2d 944, cert den 377 US 934; *Berner v British Commonwealth Pacific Airlines*, 346 F2d 532, cert den 382 US 983; *Nevarov v Caldwell*, 161 Cal App 2d 762; *Bahler v Fletcher*, 257 Ore 1; *State Farm Fire & Cas. Co. v Century Home Components*, 275 Ore 97.)

Undeniably the prevailing view has rejected the thesis advanced by Professor Currie, on the basis of the widely discussed "multiple-claimant anomaly", that issue preclusion should never be applied offensively in such cases (Currie, Mutuality of Collateral Estoppel: Limits of the *Bernhard* Doctrine, 9 Stanford L Rev 281), a thesis which Currie himself later acknowledged to be erroneous (Currie, Civil Procedure: The Tempest Brews, 53 Cal L Rev 25).

On the other hand, there appears to be no reported appellate decision asserting that the presence of multiple claimants, particularly in cases in which the issue of

liability is to be decided on the basis of a choice among different possible factual inferences, may not be a factor to be considered in evaluating the fairness of applying issue preclusion. Indeed, that possibility is quite clearly recognized in several leading authorities. (See *Zdanok v Glidden Co., Durkee Famous Foods Div., supra,* at pp 955, 956; *Berner v British Commonwealth Pacific Airlines, supra,* at p 541; cf. *Parklane Hosiery Co. v Shore, supra,* at pp 330-332.)

A study of the record discloses the presence here of four circumstances which, taken together, require denial of plaintiffs' motion to apply issue preclusion against the defendant on the basis of the single jury verdict in the *Food Pageant* case.

First, the amount at issue in *Food Pageant* was insignificant in relation to the enormous liability confronting the defendant in the several hundred pending lawsuits in which it is sought to preclude the defendant from relitigating the culpability of its conduct. Instructive in this connection is the introductory note in the Restatement of Judgments, Second, to the several sections dealing with issue preclusion (§§ 27-29), sections which, together with the accompanying comments, illustrations, and reporters' notes, constitute the most systematic, balanced and thoughtful exposition of the principles that have evolved in the area with which we are concerned.

The introductory note includes the following observation (at p 249): "There are a number of instances in which the policies against relitigation of an issue may be overcome. For example * * * when the amount in controversy in the subsequent action far exceeds that involved in the initial action, unyielding application of estoppel doctrine may operate unfairly against the party who is precluded from relitigating an issue. Conversely, if a party is aware of the potential (and perhaps not wholly foreseeable) preclusive effects of a judgment, he may feel compelled to over-litigate an issue, or to pursue an appeal that might not otherwise be taken, out of fear of the consequences in later litigation."

In this case, the potential liability of the defendant "far exceeds" the amount that was at issue in the *Food Pageant*

case. Indeed, the situation here is more extreme than that contemplated in the quoted language, which appears to have been addressed to the more traditional problem in which an issue determined in one lawsuit is sought to be relitigated in a second case between the same parties.

In the retrospective light of this court's decision, the defendant, as a litigant in *Food Pageant (supra)*, was confronted with the following disquieting prospect. A favorable verdict would have been of no benefit whatever in any of the multiple pending lawsuits other than to avoid the application of issue preclusion here sought. A determination adverse to the defendant, however, would effectively and irremediably establish the culpability of its conduct in hundreds of cases involving potential liability running into millions of dollars.

Admittedly there is inherent in the elimination of the mutuality requirement the judicial acceptance, in the interest of avoiding issue relitigation, of some inequality between a party precluded by a prior adverse determination in a lawsuit and an opposing party who would not have been precluded by a contrary determination. But, as suggested in the quoted introductory note from the Restatement, the argument for that principle is more compelling where, as in the usual situation, there is a reasonably proportionate relationship between the amount at issue in the first litigated case and that which is at issue in later cases. It seems to me of doubtful fairness to confront any litigant, even one as large as Consolidated Edison, with such an immense gulf between the benefit to be derived from a successful outcome in a lawsuit and the detriment to be suffered from an adverse determination. At a minimum, the presence of such a circumstance demands a very close judicial scrutiny of the first verdict to make certain that it is in fact just to give it such disproportionate consequences.

Second, the verdict in *Food Pageant (supra)* bears on its face unmistakable evidence of compromise. Recovery was sought in that property damage case in the sum of $81,000 and the jury returned a verdict for precisely half that amount — $40,500.

In *Schwartz v Public Administrator (supra,* at p 72), the Court of Appeals specifically listed "indications of a compromise verdict" among the factors to be weighed with regard to the application of issue preclusion, and this principle is now uniformly accepted. (See Restatement, Judgments 2d, § 29, subd [5].) The Court of Appeals did not require, as the opinion of this court suggests, that there be conclusive proof that the verdict represented a compromise, or that every other possible explanation of the verdict must be excluded with mathematical certainty. The words used in *Schwartz* were "indications of a compromise verdict", and here those indications are compelling on any realistic evaluation of what occurred.

Third, in *Food Pageant (supra)*, an action for property damage, no issue of plaintiff's culpable conduct contributing to the loss was presented. In this case, and this may reasonably be assumed to be the fact in many of the pending lawsuits, the possible negligence of the plaintiff will clearly be an issue. In Illustration 6 of section 29 of the Restatement of Judgments, Second, the principle is specifically advanced that preclusive effect should not be given to the determination of a defendant's negligence where the first verdict was for a plaintiff as to whom no issue of his own culpable behavior was presented and it is sought to apply that verdict preclusively against the defendant in an action on behalf of a plaintiff as to whom such an issue is presented.

It is, of course, true that in *Schwartz v Public Administrator (supra)* the court in fact sustained issue preclusion in a case presenting precisely the situation posed in Illustration 6. It is not clear whether the relevance of the factor, not specifically discussed in the *Schwartz* opinion, had been argued to the court. It is also possible that at the time *Schwartz* was decided, many years before the Restatement of Judgments, Second, was completed, the pertinence of the factor described in Illustration 6 had not yet come to be appreciated.

In any event, I do not believe that the *Schwartz* holding denies this court the right to consider that factor as a relevant one to be evaluated with others in determining the appropriateness of issue preclusion. Given the fact that

the Restatement of Judgments, Second, was completed only recently, after many years of painstaking work, and that it represents the most definitive and systematic treatment of the issues with which we are concerned, a circumstance identified in it as by itself negating the application of issue preclusion may at least be considered by us as one among other factors to be considered.

Fourth, the jury verdict in *Food Pageant* (*supra*) was inconsistent with determinations of the same issue previously reached by Civil Court Judges in several small claims actions. The principle is of course now well established that prior inconsistency of results is a significant factor to be considered in determining the appropriateness of issue preclusion. (See Restatement, Judgments 2d, § 29, subd [4].) It is a safe assumption that this was not among the criteria listed in *Schwartz* (*supra*) only because the facts of that lawsuit disclosed no such prior inconsistency, and indeed the very nature of the situation addressed in *Schwartz* would not have lent itself to the possibility of such inconsistency.

It does not seem to me a satisfactory answer for the court's opinion to note the limited *res judicata* effect provided by statute to determinations in the Small Claims Parts. The issue here is not whether those determinations should be given affirmative *res judicata* effect. It is rather whether the conclusion reached quite consistently in several different cases ought not to be given weight in determining the justice of applying issue preclusion against the defendant on the strength of a single subsequent contrary jury verdict.

In an opinion which strongly affirmed the appropriateness of issue preclusion in multiple claimant cases, the Supreme Court of Oregon nonetheless denied the application of issue preclusion because of prior inconsistent results on the issue in question: "Those courts and commentators which have considered the question are in virtually unanimous agreement that where outstanding determinations are actually inconsistent on the matter sought to be precluded, it would be patently unfair to estop a party by the judgment it lost." (*State Farm Fire & Cas. Co. v Century Home Components,* 275 Ore 97, 109, *supra.*)

Let me agree that several of the small claims judgments do not seem entitled to significant weight on the issue before us. I do not believe that the factual determination reached in *Lee v Consolidated Edison Co. of N. Y.* (95 Misc 2d 120, revd on other grounds 98 Misc 2d 304) may be so quickly dismissed. The opinion discloses a finding by a Civil Court Judge that gross negligence had not been established on the basis of a close study of several reports by public agencies detailing careful and comprehensive investigations into the events surrounding the blackout.

Of course, this method of factual determination is not the usual one in our system of jurisprudence, in which factual issues are normally determined on the basis of adversarial presentations. But on any realistic view it seems to me clear that a factual determination conscientiously reached by an able and experienced Judge on the basis of the study disclosed in the opinion is comparable in its reliability to a determination by a six-person jury in a property damage action against Consolidated Edison. In my opinion, the finding in *Lee v Consolidated Edison Co. of N. Y.* (*supra*) is sufficiently trustworthy to be entitled to serious consideration in evaluating the fairness of enforcing issue preclusion against the defendant in this case.

A further comment in the Restatement of Judgments, Second, is instructive. Although not addressed to the specific problem of the affirmative use of issue preclusion in multiple claimant cases, it seems to me singularly pertinent to the issues presented on this appeal. The following was said in Comment *g* of section 29: "*Ambivalence of prior determination.* The circumstances attending the determination of an issue in the first action may indicate that it could reasonably have been resolved otherwise if those circumstances were absent. Resolution of the issue in question may have entailed reference to such matters as the intention, knowledge, or comparative responsibility of the parties in relation to each other. Particularly where the issues have been tried to a jury, the circumstances may suggest that the issue was resolved by compromise or with more or less conscious reference to such matters as insurance coverage or the litigants' relative financial position. In these and similar situations, taking the prior determi-

nation at face value for purposes of the second action would extend the effects of imperfections in the adjudicative process beyond the limits of the first adjudication, within which they are accepted only because of the practical necessity of achieving finality."

I appreciate that the position urged in this dissent, if it had been accepted, would have raised questions to which there are no simple or clear-cut answers. I do not myself believe that the defendant would have been entitled to litigate the issue of its culpable conduct to the bitter end of the last case if the next several trials resulted in adverse verdicts.

But for the reasons set forth above, I believe that the single jury determination in *Food Pageant* (*supra*) is an inadequate basis under the totality of circumstances presented for a decision that precludes this defendant from relitigating the culpability of its conduct in the several hundred outstanding lawsuits. The obvious practical advantages inherent in the court's determination, which I in no way mean to minimize, seem to me far outweighed by the palpable unfairness of the result reached.

Accordingly, the order entered in the Supreme Court, Bronx County (MERCORELLA, J.), on July 22, 1982, which denied plaintiffs' motion for partial summary judgment precluding Consolidated Edison from relitigating the issue of its gross negligence, should be affirmed.

CARRO, ASCH and KASSAL, JJ., concur with KUPFERMAN, J. P.; SANDLER, J., dissents in an opinion.

Order, Supreme Court, Bronx County, entered on July 22, 1982, modified, on the law, to grant so much of plaintiffs' motion as sought to preclude Con Ed from relitigating the gross negligence issue, and otherwise affirmed, and the matter remanded for a trial on the remaining issues including causation and comparative negligence. Respondent Consolidated Edison Company of New York shall recover of appellants $75 costs and disbursements of this appeal.