■ KAREN L. KAUFMAN, Respondent, v ELI LILLY AND COMPANY, Appellant, and ABBOTT LABORATORIES, INC., et al., Respondents. — Order, Supreme Court, New York County. (Arnold Fraiman, J.), entered on December 3, 1982, affirmed. Plaintiff-respondent shall recover of defendant-appellant $75 costs and disbursements of this appeal. Concur — Kupferman, J. P., Fein, Milonas and Alexander, JJ.

Sandler, J., dissents in a memorandum as follows: In an action to recover damages for adenocarcinoma of the cervix and vagina alleged to have resulted from the ingestion by plaintiff's mother of Diethylstilbestrol (DES) while pregnant with plaintiff, the defendant Eli Lilly & Company (Lilly), appeals from an order entered December 3, 1982, which: (1) granted plaintiff's motion for partial summary judgment on the basis of issue preclusion as to certain issues determined by the special verdicts and judgment in *Bichler v Lilly & Co.* (79 AD2d 317, affd 55 NY2d 571); (2) granted plaintiff's motion and that of codefendants for a severance of plaintiff's action against Lilly from that of the trial to be conducted on plaintiff's claims against all other codefendants, including eight pharmaceutical companies; and (3) denied Lilly's cross motion to vacate a prior order restraining counsel from communicating with jurors in the *Bichler* case and for leave to depose two named jurors in the *Bichler* case. In significant respects, the issues presented on this appeal are similar to those addressed by this court recently in *Goldstein v Consolidated Edison Co.* (93 AD2d 589). Both cases involve the appropriateness of an affirmative application of issue preclusion in the absence of mutuality in the context of a multiple claimant situation against the contentions of a defendant that circumstances surrounding the determination sought to be given preclusive effect render the application of issue preclusion fundamentally unfair. To the extent to which Lilly relies upon grounds similar to those relied upon by the defendant in *Goldstein,* and there found insufficient by a majority of this court to justify the denial of issue preclusion — indications of a compromise verdict and alleged prior inconsistent determinations — I find Lilly's arguments less persuasive on balance than I had evaluated the comparable arguments presented in *Goldstein,* although of sufficient merit to make this a close question. However, the central issue here seems to me to derive from a legal development that (1) leaves in serious doubt the viability of the concert of action theory of liability on the basis of which this court sustained Lilly's liability in *Bichler* for a product not proved to have been manufactured by Lilly, and (2) strongly suggests that a sounder basis for imposing liability, and one more likely to be sustained by the Court of Appeals, may be found in the modified alternative liability theory developed by the California Supreme Court in *Sindell v Abbott Labs.* (26 Cal 3d 588), an approach that this court did not have an opportunity to consider in *Bichler,* and which requires the joinder in a single action of

companies representing a substantial portion of the relevant market. In affirming the *Bichler* judgment, the Court of Appeals found that the defendant had not preserved for its consideration the essential issues of liability presented in the case, and was explicit that the affirmance was not to be taken as an acceptance either of that theory of liability or indeed of any other that had been advanced in DES cases. In the light of this carefully limited holding, it is surely significant to the issue before us that a decisive majority of the courts that have addressed the issue have rejected the concert of action theory of liability sustained by this court in *Bichler,* some in comprehensive, carefully detailed opinions written subsequent to this court's decision. It is equally significant that in an opinion written subsequent to this court's decision, the Massachusetts Supreme Court indicated that in a proper case it might be prepared to sustain liability on the basis of the modified alternative liability theory. (See *Payton v Abbott Labs.,* 386 Mass 540, ___, 437 NE2d 171, 190.) The effect of the several determinations embraced in the order appealed from is to require a second trial on a theory of liability not likely to be sustained by the Court of Appeals, and to defer for some period of time a trial that would permit a determination of factual issues relevant to a theory of liability that has a better chance of being sustained. In any event, it seems to me manifestly preferable in the interest of the expeditious, economical and fair determination of the many pending DES lawsuits in this State that there be an early trial which permits a resolution of issues pertinent to more than one theory of liability in this unclear and doubtful area, and which would also present the possibility of a definitive determination of liability with regard to pharmaceutical companies that collectively represent a very large share of the DES market. The plaintiff was born in 1954. In her amended complaint, bill of particulars, and incorporated medical records it is alleged that in 1973 it was learned that she had adenocarcinoma of the cervix and vagina for which a radical hysterectomy was performed, and that these injuries were caused by her mother's ingestion of DES while pregnant with plaintiff. Joined as defendants were eight pharmaceutical companies and two individuals, one of whom, the director of medical research for Lilly, has been dismissed from the action. The action is one of an estimated thousand individual or class action products liability lawsuits brought against pharmaceutical manufacturers by and on behalf of the female offspring of the several million pregnant women who ingested DES over an extended period. The overriding legal issue in these actions has derived from the circumstance that the passage of time between the ingestion of DES and the development of its alleged effects has made it impossible in most cases to determine accurately the identity of the drug company whose DES tablets were taken by the plaintiff's mother. Thus the courts have been presented with a conflict between the familiar principle that a tort-feasor may be held liable only for damage that it has caused (Restatement, Torts 2d, §§ 402 A, 433 B; Prosser, Law of Torts [4th ed], § 98), and the sense of justice which urges that the victims of this tragedy should not be denied compensation because of the impossibility of identifying the individual manufacturer of these generic tablets if their manufacture and distribution were otherwise culpable. The instant action is one of some 15 in the First Department in this State that were consolidated by administrative order before a single Judge. The first of these cases to be tried was the *Bichler* case. Although the record is unclear as to why it was selected as the first case to be tried, it seems a reasonable inference that this followed from the belief of plaintiff that she could establish that Lilly was the manufacturer of the drug ingested by plaintiff's mother. The jury having determined that issue in favor of Lilly, the trial proceeded against Lilly on the essential theory that it was liable because it had acted in concert with other drug manufacturers in the

testing and marketing of DES for use in treating accidents of pregnancy. In response to various specific interrogatories propounded by the trial court, the jury concluded, as here relevant, that DES was not reasonably safe at the time it was ingested; that the defendant Lilly should have foreseen at the time it was ingested that DES might cause cancer in the offspring of pregnant women who took it; that a reasonably prudent drug manufacturer would have tested it on pregnant mice before marketing it, and that such tests would have confirmed that the drug was dangerous; that such a manufacturer would not have marketed DES if it had known that DES caused cancer in the offspring of pregnant mice; and that defendant and other manufacturers had acted in concert with each other in the testing and marketing of DES for use in the treatment of pregnant women. As elaborated by the trial court in his charge to the jury, the jury was permitted to find concert of action if they found that "defendant and the other drug companies either consciously paralleled each other in failing to test D.E.S. on pregnant mice, as a result of some implied understanding, or that they acted independently of each other in failing to do such testing, but that such independent actions had the effect of substantially aiding or encouraging the failure to test by the others". It was shortly after the Court of Appeals affirmance of the judgment in favor of the plaintiff in *Bichler* in the carefully circumscribed opinion described above that the several motions were made which resulted in the order here appealed from. Preliminarily, I agree with Special Term that severance of the action against the other defendants is clearly required if issue preclusion is to be granted against Lilly with regard to the critical factual issues addressed in specific interrogatories by the *Bichler* jury. Manifestly it would be unfair to the other pharmaceutical companies to litigate these critical issues in a single trial in which the jury would necessarily be instructed that they had been already determined adversely to Lilly. It is precisely for this reason that I believe that issue preclusion should be denied in order to permit an early trial of the issues against all the named pharmaceutical companies. I further agree with Special Term that there is a fundamental identity of issue between *Bichler* and the instant case in the sense in which that term was used by the Court of Appeals in *Schwartz v Public Administrator of County of Bronx* (24 NY2d 65, 71). The purported differences argued on behalf of Lilly on this appeal are without merit. On the other hand, I disagree with the reason assigned by Special Term for denying Lilly's cross motion for leave to depose two named jurors in the *Bichler* case. That cross motion was made in support of Lilly's contention, in my opinion a substantial one, that the verdict in favor of the plaintiff in *Bichler* was a compromise. In denying this cross motion, Special Term applied precisely the same standard that has developed with regard to motions to depose jurors in an effort to vacate and set aside a jury verdict. This seems to me clearly erroneous for the reasons set forth persuasively in *Katz v Lilly & Co.* (84 FRD 378), which are fully in accord with a notable comment, Comment *g* of section 29 of the Restatement of Judgments 2d. As the Restatement noted, there are certain circumstances, including evidence of compromise, which would be insufficient to justify the vacating of an adjudication because of the practical necessity of achieving finality, but the presence of which would make it inappropriate to grant issue preclusion with regard to a later action. However, this ruling does not seem to me of dispositive importance because the papers submitted by Lilly seem to me to establish quite satisfactorily "indications of a compromise verdict" that the Court of Appeals identified in *Schwartz v Public Administrator of County of Bronx* (*supra*, p 72) as a circumstance that would weigh against the application of issue preclusion. A lawyer associated with Lilly's counsel at the time of the *Bichler* trial, and who at the time of his affidavit was an Assistant United States Attorney, deposed that in a conversa-

tion with several jurors immediately following the *Bichler* verdict, he was informed that two jurors agreed to a determination of liability against Lilly only on the basis of a commitment that they could participate in the fixing of damages in a way that in effect would permit them to reduce the verdict. This affidavit, the reliability of which does not seem to me open to serious question, is fully consistent with certain facts developed on the record during the period of jury deliberations. The inference of compromise is further supported by the character of the *Bichler* damage award, aberrationally low in the light of the seriousness of the injuries sustained by the plaintiff. In short, the showing on behalf of Lilly, wholly without regard to what might have developed on the depositions, constitutes evidence of compromise of a kind that is appropriately weighed against the application of issue preclusion. The troublesome question presented by this aspect of the appeal is whether or not the indications of a compromise verdict in *Bichler* automatically require the denial of the application of issue preclusion. In *Schwartz v Public Administrator of County of Bronx* (*supra*, p 72) the Court of Appeals listed "indications of a compromise verdict" as one of a number of factors to be considered in determining whether or not a party had received a full and fair opportunity to litigate the relevant issues in the first litigation. The *Schwartz* opinion does not state that the presence of any single listed factor is necessarily dispositive, and it is my tentative judgment that the opinion contemplated a weighing of the several listed factors in the context of the whole situation to determine whether it would be unfair to grant issue preclusion. However, in the context of a multiple claimant situation, in which the granting of issue preclusion would necessarily extend to numerous lawsuits, I doubt the essential fairness of granting such effect to a determination disclosed to have been the result of compromise. However, as already noted, the most compelling argument against issue preclusion here, and in favor of a joint trial involving all of the pharmaceutical company defendants, arises from the legal development noted above, and the significance of that development for the expeditious, economical and orderly determination of the legal issues presented in the many pending DES cases. Apart from this court's decision in *Bichler,* only one other court, an intermediate appellate court in Michigan, appears to have given any support to the application of the concert of action liability theory (*Abel v Lilly & Co.,* 94 Mich App 59), and that authority is of limited value since the decision appeared to have turned on idiosyncratic aspects of the summary judgment rule in Michigan, and was in any event decided prior to most of the decisions in this area. Every other court that addressed the issue rejected the concert of action theory of liability as an appropriate basis for imposing liability on a pharmaceutical company for a DES product whose source of manufacture was not established. (*Sindell v Abbott Labs., supra; Morton v Abbot Labs.,* 538 F Supp 593; *Payton v Abbott Labs.,* 512 F Supp 1031; *Ryan v Lilly & Co.,* 514 F Supp 1004; see, also, *Payton v Abbott Labs.,* 386 Mass 540, *supra; Namm v Frosst & Co.,* 178 NJ Super 19; *Lyons v Premo Pharm. Labs.,* 170 NJ Super 183, petition for cert den 82 NJ 267.) The significance of this body of authority may not fairly be minimized as representing a rigid, unimaginative judicial refusal to re-examine past precedents in the light of a dramatically different and new situation. Several of the opinions rejecting the concert of action theory disclose a conscientious, careful analysis of the applicable rules of law in the light of a sensitive and understanding discussion of the realities of the problems presented by the DES cases. While the ultimate judgment of the Court of Appeals cannot of course be forecast with any degree of certainty, it would seem to me realistic in terms of the immediate issue for this court to recognize the substantial possibility that the Court of Appeals may find persuasive the analysis that has been accepted by almost all the courts that have considered

the issue. The most important of these opinions, and the one I think likely to prove most influential ultimately in this area, is that of the California Supreme Court in *Sindell v Abbott Labs.* (*supra*). The majority of the California Supreme Court (per Mosk, J.) carefully analyzed the several theories that had been advanced in support of imposing liability on pharmaceutical companies for DES products whose source of manufacture could not be established. These theories were identified as: concert of action; enterprise liability; and alternative liability. With regard to the concert of action theory of liability, the court carefully set forth the governing principles advanced in section 876 of the Restatement of Torts; the analysis of these principles in Prosser (*op. cit.*, § 46, p 292); and the several factual contentions of the plaintiff, quite indistinguishable from those advanced by the plaintiff in *Bichler*. Following an analysis similar to that which appears in other decisions, the court stated (at p 605): "The gravamen of the charge of concert is that defendants failed to adequately test the drug or to give sufficient warning of its dangers and that they relied upon the tests performed by one another and took advantage of each others' promotional and marketing techniques. These allegations do not amount to a charge that there was a tacit understanding or a common plan among defendants to fail to conduct adequate tests or give sufficient warnings, and that they substantially aided and encouraged one another in these omissions * * * What the complaint appears to charge is defendants' parallel or imitative conduct in that they relied upon each others' testing and promotion methods. But such conduct describes a common practice in industry: a producer avails himself of the experience and methods of others making the same or similar products. Application of the concept of concert of action to this situation would expand the doctrine far beyond its intended scope and would render virtually any manufacturer liable for the defective products of an entire industry, even if it could be demonstrated that the product which caused the injury was not made by the defendant." The opinion went on to consider the claim of liability based on the enterprise liability theory developed in *Hall v Du Pont De Nemours & Co.* (345 F Supp 353), and concluded that this theory, whatever its merits, could not be correctly applied in the DES situation. Finally, the California Supreme Court concluded that liability could be properly based on an adaptation of the principle of alternative liability first set forth by that court in the well-known case of *Summers v Tice* (33 Cal 2d 80), and thereafter embodied in section 433 B (3) of the Restatement of Torts 2d. In *Summers,* the plaintiff had been injured when shot by one of two hunters who had negligently shot in his direction under circumstances making it impossible to determine which had fired the shot actually causing the injury. The court held (p 86) that under the circumstances the burden of proof shifted to each of the defendants, "each to absolve himself if he can." In *Sindell,* the California Supreme Court noted that the principle of "alternative liability" set forth in *Summers* could not be applied in its original form to a situation in which there could be no certainty that the actual manufacturer was one of the named defendants. However, the court concluded (pp 611-612) that the principle could be adapted to achieve fair and reasonable results in the unusual situation presented: "[W]e hold it to be reasonable in the present context to measure the likelihood that any of the defendants supplied the product which allegedly injured plaintiff by the percentage which the DES sold by each of them for the purpose of preventing miscarriage bears to the entire production of the drug sold by all for that purpose * * * If plaintiff joins in the action the manufacturers of a substantial share of the DES which her mother might have taken, the injustice of shifting the burden of proof to defendants to demonstrate that they could not have made the substance which injured plaintiff is significantly diminished * * * The presence in the action of a substantial share of the

appropriate market also provides a ready means to apportion damages among the defendants. Each defendant will be held liable for the proportion of the judgment represented by its share of that market unless it demonstrates that it could not have made the product which caused plaintiff's injuries." Significantly, the Massachusetts Supreme Court, in a recent comprehensive opinion responding to certified questions relating to liability issues in DES cases, indicated the possibility that on an adequate record the court would "recognize some relaxation of the traditional identification requirement in appropriate circumstances so as to allow recovery against a negligent defendant of that portion of a plaintiff's damages which is represented by that defendant's contribution of DES to the market in the relevant period of time." (*Payton v Abbott Labs.,* 386 Mass, at p __, 437 NE2d, at p 190.) In summary, I am persuaded that the expeditious, orderly and economical disposition of the many DES lawsuits pending in this department and State will be furthered by an early trial joining as defendants pharmaceutical companies who represent a substantial part of the relevant DES market. Such a trial would permit a determination not only of the issues addressed by the jury in *Bichler,* but of issues pertinent to the theory of alternative liability advanced by the California Supreme Court in *Sindell,* and would thus make possible, depending on the jury determination, a definitive judgment affecting the liability of the major pharmaceutical companies in all the outstanding cases. Even if I am wrong in my judgment that liability is more likely to be sustained by the Court of Appeals on the basis of the alternative liability theory adapted in *Summers,* or a variation thereof, it would still seem to be inescapably clear that the essential purposes intended to be served by issue preclusion are far more likely to be achieved by such a joint trial. Accordingly, the order of the Supreme Court, New York County (Fraiman, J.), entered December 3, 1982, granting plaintiff's motion for summary judgment; granting plaintiff's motion and that of codefendants for a severance of plaintiff's action against Lilly from that of the trial to be conducted against all other codefendants; and denying Lilly's cross motion for leave to depose two named jurors in the *Bichler* case, should be modified to deny plaintiff's motion for partial summary judgment, and to deny the several motions for severance, and otherwise affirmed. [116 Misc 2d 351.]