OPINION OF THE COURT
Harry Edelstein, J.
The defendant Consolidated Edison Corp. cut off electrical services to the common hallways and elevators at 6:15 p.m. on Friday, May 9, 1975, in the apiartment dwelling in which the plaintiff resided. This also shut off water power to the tenants which was supplied by electrical pumps. The premises was an 18-story apartment house, containing 154 apartments, and about 500 tenants. The electrical service to the individual apartments was not shut off.
The plaintiff seeks to recover damages for injuries sustained when she fell on some wax drippings in a darkened stairway. As president of the tenants’ association, the plaintiff, together with three of her neighbors using flashlights, was tending to the older and bedridden tenants.
The jury deliberated and found that all the defendants were guilty of negligence and gross negligence. Thereafter, the jury found that Lefrak Organization was 70% negligent, and Consolidated Edison was 30% negligent. With regard to gross negligence, the jury returned a punitive damage award against Consolidated Edison in the sum of $5,000,000, and against Lefrak Organization in! the sum of $4,000,000. Before the jury proceeded to determine the amount 6f compensatory damages that the plaintiff would be entitled to, defendant Lefrak Organization settled the punitive damage award for an undisclosed amount and compensatory damages in the sum of $200,000. Because of media publicity, both sides and the court agreed to submit the question of compensatory damages to a new panel. The defendant Consolidated Edison brings this postverdict motion to set aside the finding of negligence and gross negligence, and the $5,000,000 punitive damage award. Alternatively, Consolidated Edison seeks to reduce the punitive damage award as being exdessive.
Defendant Consolidated Edison moves to set aside the jury *567 verdict for the following reasons: that defendant had a statutory and contractual right to terminate said service due to defendant Lefrak’s nonpayment of a bill duly tendered; that as a matter of law the utility company may not be cast in damages as a result of an interruption of electrical services where there is no contract between plaintiff and defendant for the service that is being interrupted; that the jury verdict must be set aside in that plaintiff was contributorily negligent as a matter of law; that the jury verdict should be set aside insofar as it relates to punitive damages in that plaintiff has failed to establish her right to such damages as a matter of law; or in the alternative, that the punitive damage award should be reduced in that it is grossly excessive.
I plaintiff’s common-law action against defendant for NEGLIGENCE
Defendant claims that they may not be cast in damages as a result of the interruption of electrical service since there was no contract between the plaintiff and the defendant for the service that was interrupted.
In the leading case cited by defendant, Moch Co. v Rensselaer Water Co. (247 NY 160), the Court of Appeals held that a property owner could not maintain an action against the defendant water company for failure to furnish an adequate supply of water to extinguish a fire which destroyed plaintiff’s warehouse. The defendant water company contracted with the City of Rensselaer for the supply of water to its citizens. The plaintiff alleged that while the defendant had been promptly notified of the fire, it had omitted and neglected to supply a sufficient and adequate supply of water to extinguish the fire. "The plaintiff would have us hold that the defendant, when once it entered upon the performance of its contract with the city, was brought into such a relation with every one who might potentially be benefited through the supply of water at the hydrants as to give to negligent performance * * * the quality of tort * * * We are satisfied that liability would be unduly and indeed indefinitely extended by this enlargement of the zone of duty * * * We put aside * * * the problem that would arise if there had been reckless and wanton indifference to the consequences measured and foreseen * * * What we are dealing with at this time is a mere negligent omission, unaccompanied by malice or other aggravating elements.” (Moch Co. v Rensselaer Water Co., supra, pp 168-169.)
In each case cited by defendant Consolidated Edison, it was *568 alleged that the utility compjany had failed to maintain or perpetuate service, but none of the plaintiffs claimed an affirmative act of negligence. The decisions indicate the courts’ concern that the extension of liability under the circumstances described would unduly extend a corporate defendant’s liability to an indefinite and unforeseeable number of beneficiaries. (Beck v FMC Corp., 53 AD2d 118.)
Moch and the cases which followed may be distinguished from the case at bar on a number of grounds. The plaintiff as well as the other tenants in this building were customers of defendant Consolidated Edison!. Her claim is not as a member of the public in general. This base presents the very situation reserved by the court in Moch. Here we are faced with a "reckless and wanton indifference to consequences measured and foreseen”. (Moch Co. v Rensselaer Water Co., supra, at p 169.) The conduct of Consolidated Edison was not a mere negligent omission. It was proven to the jury’s satisfaction that Consolidated Edison, by its agent, Barney Quinn, engaged in conduct which caused a foreseeable injury to a foreseeable plaintiff. It was established that Quinn was entrusted with the discretionary authority to terminate service in the building, and that he recognized the dangers presented. Quinn testified that Consolidated Edison rebords showed that service was terminated at 6:15 p.m. on a Friday evening. The shutoff resulted in the termination of electricity to all common areas, the termination of elevator services, and water. Testimony at trial indicated that employees of the defendant gained access to the building by representing themselves to be elevator repairmen. Immediately prior to authorizing the termination of service, Mr. Quinn, Consolidated Edison’s field manager, discussed with the building superintendent some of the potential hazards presented by the shutoff. By making such an inquiry, he evinced a recognition of Consolidated Edison’s duty to the 500 tenants in this 18-story building, and a conscious awareness of the potential danger to which they were being subjected. As Chief Judge Cardozo succinctly stated: "The hand once set to a task may ¡not always be withdrawn with impunity though liability would fail if it had never been applied at all.” (Moch Co. v Rensselaer Water Co., 247 NY 160, 167.)
II defendant’s statutory and contractual right to terminate SERVICE
Defendant claims it had a statutory and contractual right to *569 terminate the service since defendant Lefrak had neglected to pay a bill. There was testimony that defendant Lefrak paid some $3,500,000 a year to defendant Consolidated Edison for utility service in about 150 apartment buildings. The amount of bill in question was insignificant in relation to the total. The defendant claims it complied with, and relies upon, section 15 of the Transportation Corporations Law of the State of New York with regard to notice. The statute reads as follows: "1. If any person supplied with gas or electric light by any such corporation shall neglect or refuse to pay the rent or remuneration due for the same or for the wires, pipes or fittings let by the corporation, for supplying or using such gas or electric light or for ascertaining the quantity consumed or used as required by his contract with the corporation, or shall refuse or neglect, after being required so to do, to make the deposit required, such corporation may discontinue the supply of gas or electric light to the premises of such person; and the officers, agents or workmen of such corporation may enter into or upon such premises between the hours of eight o’clock in the forenoon and six o’clock in the afternoon, and separate and carry away any meter, pipe, fittings, wires or other property of such corporation, and may disconnect any meter, pipe, fittings, wires or other works whether the property of the corporation or not, from the mains, pipes or wires of the corporation. But the supply of gas or electric light shall not be discontinued for non-payment of bills rendered for service until and after a five-day written notice has been served upon such person either by delivering the same to such person personally or by mailing the same in post-paid wrapper addressed to such person at premises where service is rendered.” It is also claimed that paragraph 15 of the tariff (contract for electrical service) between Consolidated Edison and Lefrak authorized the termination of the service.
The statute and tariff cited do not relieve the defendant from its common-law tort liability. The defendant’s shutoff records indicate that Consolidated Edison failed to comply with the terms of section 15 of the Transportation Corporations Law which restricts the termination of service to the hours of 8:00 a.m. to 6:00 p.m. The only records produced by defendant indicate that service was terminated after the time permitted by statute.
Even if we assume compliance with the statute in question, such compliance still does not relieve defendant of its com *570 mon-law duty to act reasonably. In the case of Pompeii Estates v Consolidated Edison Co. of N. Y. (91 Misc 2d 233), the Supreme Court, Queens County, dealt with the issue of negligent termination of service toj plaintiffs unoccupied building. The court found no issue with respect to statutory compliance with the terms of section 15 of the Transportation Corporations Law, but held that Consolidated Edison had a duty to act reasonably when disconnecting service; that the resulting damage to plaintiffs property was foreseeable; and thereby imposed liability for the damjage which occurred. The court stated, "Since the language of the statute is discretionary in nature — 'may discontinue’ — it does not relieve the utility of its common-law obligation to exercise ordinary care when a decision to discontinue is made * * * Where there is a foreseeability of damage to another that may occur from one’s acts, there arises a duty to use care (Palsgraf v Long Is. R. R. Co., 248 NY 339).” (Pompeii Estates v Consolidated Edison Co. of N. Y., supra, pp 235, 237.)
In the case at bar, the court charged the applicable statutes and tariffs. The jury found defendant liable on the theories of both common-law and gross negligence.
III plaintiff’s contributory negligence as a matter of law
Defendant argues that plaintiff, by walking down a flight of stairs in a darkened stairwell was guilty of contributory negligence as a matter of law! The uncontradicted testimony in this case indicates that Mrs. Hall went into this darkened stairway with three of her neighbors using flashlights for the purpose of tending to some of the older and bedridden tenants. Plaintiff testified that she slipped and fell on wax that had dripped onto the stairway. The jury was charged with the applicable law on the defense of contributory negligence and the assumption of the risk. These questions were properly treated as issues of fact for the jury. The Appellate Division, Second Department, in the case of Rivera v Purkan Assoc. (38 AD2d 965), held "The statement of the trial court that plaintiff was guilty of contributory negligence as a matter of law was in error. The issue of whether plaintiff’s descending a darkened stairway while holding the bannister constituted contributory negligence was an issue of fact for the jury”.
IV PUNITIVE DAMAGES
Defendant Consolidated Edison argues that the plaintiff is not entitled to punitive damages as a matter of law. *571 Alternatively, they would seek a reduction of the jury’s award of $5,000,000 as being grossly excessive.
Punitive damages are allowable in personal injury actions based upon negligence, if such negligence amounts to flagrant misconduct. (Soucy v Greyhound Corp., 27 AD2d 112.) Malice, a prerequisite to the allowance of punitive damages, may be established by a showing that the acts committed by the defendant were committed recklessly, wantonly, or without regard to the rights of plaintiff or of people in general. (Soucy v Greyhound Corp., supra, p 113 [citing Magagnos v Brooklyn Hgts. R. R. Co., 128 App Div 182]; 14 NY Jur, Damages, § 179; 7A Warren, Negligence, ch 5, § 1.04.) The Court of Appeals stated in Toomey v Farley (2 NY2d 71, 83), "Punitive or exemplary damages are intended to act as a deterrent upon the libelor so that he will not repeat the offense, and to serve as a warning to others. They are intended as punishment for gross misbehavior for the good of the public”. Testimony at the trial indicated that Consolidated Edison employees entered the building in question after business hours on a Friday evening, impersonating elevator repairmen, terminated electrical service at 6:15 p.m., thereby shutting off light to all the common areas, namely hallways and staircases, terminating elevator service and all water to the building. The defendant was aware that this was an 18-story building housing over 500 tenants, and that by terminating such electricity on a Friday evening, they were leaving the tenants without any reasonably safe means to enter or leave the building. This termination of electric service set the stage for a tragedy should fire or illness occur. This foreseeable potential for danger would have continued through the entire weekend until Monday at 8:00 a.m. Fortunately for these 500 tenants, the Mayor’s office was contacted, and one of his representatives interceded in their behalf. A vice-president of defendant Consolidated Edison was contacted in his home and prevailed upon to order the emergency restoration of services some six hours later.
Defendant argues that it may not be held vicariously liable for punitive damages for the gross negligence of one of its employees. The Court of Appeals for the Second Circuit held in Doralee Estates v Cities Serv. Oil Co. (569 F2d 716, 722) that, "The test of who is * * * a 'person in authority’ to bind the corporate entity to participation or ratification cannot be rigid * * * The question is whether the act or ratification is done by a person of such responsibility as to arouse the *572 'institutional conscience’ * * * The test is whether the continuing tortious conduct has been brought home to the consciousness of relatively important managerial personnel with authority to make a decision for the corporation that would have prevented the damage.”
It is clear from Mr. Quinn’s testimony that he had the authority to make the decision to terminate the service, and that his decision was based upon corporate policy. Furthermore, defendant failed to offer any evidence that Mr. Quinn was acting contrary to established procedures or in excess of his expressed authority.
The court in Doralee Estates (supra, p 722) went on to state that "To hold that punitive damages may not be imposed unless there is participation in the tort-feasing decision by the highest corporate executives is unrealistic”.
V IS THE PUNITIVE DAMAGE AWARD EXCESSIVE?
The jury returned a punitive damage verdict against defendant Consolidated Edison in the amount of $5,000,000. Defendant seeks an order setting aside the jury award as excessive. Where circumstances justify the allowance of punitive damages, the question of whether such damages should be awarded in a particular case and the question of amount is a matter within the discretion cjf the jury. (7A Warren, Negligence, ch 5, § 1.09.) However, the courts have consistently set aside or reduced such verdicts if found to be excessive. The standard which should be applied was stated in Reynolds v Pegler (123 F Supp 36, 39, affd 223 F2d 429): "In general, the authorities are in accord that; it is only when the amount awarded shocks the 'judicial conscience’ that the Court is warranted in interfering with the award [and] that the result is not based upon a rational consideration of the evidence and the proper application of the law.” The Court of Appeals of this State has stated in the case of Nardelli v Stamberg (44 NY2d 500, 504), "the amount óf exemplary damages awarded by a jury should not be reduced by a court unless it is so grossly excessive 'as to show by its very exorbitancy that it was actuated by passion’.”
This court is of the opinion that the award of $5,000,000 in the case at bar is grossly excessive in light of the facts in this particular case. The jury verdict is modified in the exercise of this court’s discretion to the extent that it is reversed and a new trial on the issue of punitive damages is granted, unless the plaintiff, within 20 days after service of a copy of the *573 order herein with notice of entry, serves and files, in the office of the clerk of this court, a written stipulation consenting to reduce the verdict on punitive damages to the amount of $50,000, and the entry of an amended judgment in accordance therewith.
With regard to compensatory damages, the matter is restored to the Trial Calendar.