OPINION OF THE COURT
Gabriel M. Krausman, J.
Defendant Consolidated (Con) Edison moves for a judgment n.o.v. against plaintiff Luis Perez, summary judgment dismissing defendant New York City Housing Authority’s (NYCHA) cross claim for indemnification and granting its cross claim for indemnification against NY-CHA.
This is a factually uncomplicated slip and fall injury case arising out of the July 14, 1977 blackout which cut off electric power to millions of buildings and residents in the New York metropolitan area including the NYCHA apartment complex at 1750 Prospect Place, in which plaintiff *1056 resided. The blackout rendered the building’s elevators inoperable, caused the lights used to illuminate the windowless stairs to shut off thereby forcing the building’s residents to climb up and down the darkened stairs to get in and out of the apartment house. At approximately 1:00 p.m. on the day of the blackout, plaintiff and his family, after purchasing some food, ascended the blackout darkened stairs to reach their third-floor apartment. As the infant plaintiff neared the second floor landing and groped to find his way in the pitch black, he slipped and fell “face first” into an open door and was injured. At the close of plaintiff’s case Con Edison moved to dismiss, contending that plaintiff failed to adduce any evidence that Con Edison was negligent in the causing of the accident. Based on the Court of Appeals decision in Food Pageant v Consolidated Edison Co. (54 NY2d 167) upholding a jury finding of gross negligence by Con Edison this court ruled that defendant was collaterally estopped from litigating the issue of its gross negligence in causing the July, 1977 blackout. This court also denied Con Edison’s subsequent motion for summary judgment against plaintiff and NYCHA ruling that as a matter of law Con Edison owed a duty to plaintiff and NYCHA and could be found liable for injury resulting from its gross negligence. After trial the jury returned a verdict in favor of the plaintiff in the sum of $5,000 finding NYCHA 5% negligent, Con Edison 75% negligent and plaintiff 20% contributorily negligent.
i
Under the doctrine of collateral estoppel or issue preclusion a party may preclude an adversary from relitigating issues which that adversary had an opportunity to and did litigate in a prior action. It may be asserted either defensively, i.e., both parties to the subsequent action in which preclusion is sought were litigants in the prior proceeding where the issue was resolved, or offensively, i.e., one who was not a party or in privity to a party in a proceeding in which a determination was made with regard to a particular issue may in a subsequent action preclude his adversary from litigating that issue if the party against whom estoppel is sought was a litigant in the initial action. (Parklane Hosiery Co. v Shore, 439 US 322; Gilberg v *1057 Barbieri, 53 NY2d 285, 291; Schwartz v Public Administrator of County of Bronx, 24 NY2d 65.) Whether offensive use of collateral estoppel is appropriate in a particular case is left to the broad discretion of the trial court. (Parklane Hosiery Co. v Shore, supra, p 331.) In exercising discretion the trial court must consider whether there is an “identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second * * * [if the litigant against whom preclusion is sought had] a full and fair opportunity to contest the decision now said to be controlling.” (Schwartz v Public Administrator of County of Bronx, supra, p 71; Gilberg v Barbieri, supra, p 290.) The party seeking preclusion bears the burden of showing identity of issue while the litigant opposing collateral estoppel must show that it did not have a full and fair opportunity to litigate the issue. (Schwartz v Public Administrator of County of Bronx, 24 NY2d, at p 73; B. R. DeWitt, Inc. v Hall, 19 NY2d 141, 147; Vincent v Thompson, 50 AD2d 211, 217-218.)
Based on the Food Pageant decision plaintiff and NY-CHA seek to preclude Con Edison from relitigating the sole issue of Con Edison’s gross negligence in the causing of the July 14, 1977 blackout. Con Edison contends that because this action involves questions of liability for personal injury, superseding cause and comparative negligence which were not present in Food Pageant (54 NY2d 167, supra), the issue of gross negligence determined in Food Pageant is not identical to the issue sought to be precluded in this case and collateral estoppel cannot lie. This contention only seeks to confuse an otherwise clear issue. This court’s ruling with regard to collateral estoppel was limited solely to the issue of Con Edison’s gross negligence in precipitating the blackout. The jury was specifically charged that the court ruled as a matter of law only with regard to Con Edison’s negligence in causing the blackout and that it was for the jury to determine if given that ruling Con Edison could be found liable for the injury and if yes, to what extent.
To invoke collateral estoppel it is only required that the issue given preclusive effect be dispositive of the particular issue sought to be precluded, not of ultimate liability with *1058 regard to all issues in the case. (Shanley v Callanan Inds., 54 NY2d 52.) In this case the Food Pageant (supra) verdict is dispositive with regard to the particular issue of Con Edison’s gross negligence in the causing of the blackout and it was for the jury to determine, taking into account all the evidence before it, whether that negligence subjected Con Edison to any liability. The sole issue of gross negligence determined in Food Pageant (supra) and sought to be precluded in this case is identical and it is crystal clear that the prior determination is dispositive of that issue in this action. (See Whitestone Packing Corp. v Consolidated Edison Co. of N. Y., NYLJ, Feb. 25, 1982, p 12, col 3.) Plaintiff has made the requisite showing of identity of issue.
In determining whether Con Edison had a full and fair opportunity to litigate the issue of gross negligence “the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation” must be considered. (Schwartz v Public Administrator of County of Bronx, 24 NY2d 65, 72, supra.) Con Edison does not now contend that issue preclusion based on Food Pageant (supra) is unfair and a denial of due process because of the incompetence of counsel, foreseeability of future litigation, new evidence, forum or extent of the prior litigation. Indeed Con Edison readily states that the blackout gave rise to over 500 claims involving hundreds of millions of dollars. It realized the possible ramifications of an adverse determination on the issue of gross negligence and there is no doubt that Con Edison vigorously defended against each claim. Con Edison gave it their best shot and the Food Pageant jury found grossly negligent conduct. The verdict was left intact after all appeals were exhausted. It is argued that to afford the Food Pageant finding preclusive effect is patently unfair in view of the fact that Food Pageant (54 NY2d 167, supra): (1) is inconsistent with a number of prior judicial determinations favorable to Con Edison; (2) was a compromise verdict; (3) this claim, unlike that in Food Pageant, involves different questions of fact *1059 and law, e.g., intervening and proximate cause. The unfairness, it is contended, is compounded by virtue of the fact that this is a multiple claimant circumstance and Con Edison is vulnerable to extensive liability.
Aware of the possible unfairness that may result and adhering to the admonition of the Court of Appeals to not reduce to an inflexible formula “the question as to whether a party has had a full and fair opportunity to contest a prior determination” (Gilberg v Barbieri, 53 NY2d 285, 292, supra) this court finds the application of collateral estoppel appropriate. The prior determinations cited by Con Edison as being favorable to them were brought in the main in the Small Claims Part of this court by private claimants unrepresented by counsel. Section 1804 of the New York City Civil Court Act (CCA) provides that actions brought in the Small Claims Part of the court be informal and simplified and that the rules of disclosure, practice, procedure, pleading and evidence are not to be strictly adhered to. Recognizing the relaxed nature of the small claims proceeding section 1808 of the CCA provides: “A judgment obtained under this article * * * shall not * * * be deemed an adjudication of any fact at issue or found therein in any other action or court.” (Emphasis added.) A reading of the cases cited by Con Edison reveals that offers of proof in those cases, by claimants, with regard to the issue of gross negligence were at best feeble. It is precisely because the offers of proof and argument in those cases are not required to and did not reach the caliber of advocacy in the actions tried in more formal proceedings, such as Food Pageant (supra), that it is gross error to consider those small claims actions as prior inconsistent determinations, treat them with the same regard as the more formal proceedings and deny preclusive effect to a verdict returned by a competent jury in a case where both claimant and defendant were represented by able trial counsel who vigorously presented their respective viewpoints.[1] Discre *1060 tion requires and indeed mandates that the Food Pageant verdict, contrary to Con Edison’s argument, establishes the rule not the exception and is to be followed in future cases.
The contention by Con Edison that the Food Pageant verdict was a compromise is wholly unsubstantiated. Other than counsel’s attempt at conjecture as to how the jury arrived at its verdict, Con Edison adduces no factual basis and makes no colorable argument to support its contention. (See Katz v Lilly & Co., 84 FED 378 [colorable argument made where after trial one of the jurors stated that the verdict was a compromise].) Furthermore, there is no validity to the claim that the collateral estoppel ruling denied Con Edison due process. Although it is true that the issue of proximate and intervening cause in this case differentiate it from Food Pageant (54 NY2d 167, supra) there is no indication that the court’s ruling in any way tainted the jury’s deliberations with regard to Con Edison’s complicity in this action. Moreover, as stated, the ruling did not preclude Con Edison from fully, fairly and effectively litigating the case.
ii
In the universe of tort law it is an established principle that there can be no liability without a duty. (Palsgraf v Long Is. R. R. Co., 248 NY 339, 342.) It is also well established that a duty exists where a defendant has “got himself into such a relation with the plaintiff, that he has begun to affect the interests of the plaintiff adversely, as distinguished from merely failing to confer a benefit upon him.” (Prosser, Law of Torts [4th ed], § 56, p 340, citing Moch Co. v Rensselaer Water Co., 247 NY 160, 167-168.) To determine whether plaintiff Luis Perez and defendant NY-CHA may recover damages in tort* [2] from Con Edison, the *1061 nature of the relationship between the parties in this action must be examined.
In this case the power utilized in the apartment complex which defendánt NYCHA owned and in which plaintiff resided was purchased from the Power Authority of the State of New York (PASNY). PASNY supplied NYCHA with the necessary electric power from plants which it operated to generate the electricity or if it could not produce sufficient energy, pursuant to a 1975 agreement with Con Edison providing for the sale of power and energy, PASNY could purchase the needed power from Con Edison. In addition, Con Edison and PASNY entered into a “Service Agreement for the Delivery of Power and Energy from Astoria 6 Unit and Indian Point 3 Unit” (Service Agreement). Under the Service Agreement PASNY rented Con Edison’s distribution facilities and Con Edison was required to deliver all power purchased or generated by PASNY to its ultimate destination. At trial Con Edison’s expert witness testified that Con Edison serviced the building in this case, 1750 Prospect Place, with electric power. Moreover, the uncontested evidence in this case is that the facilities used to transmit and distribute the power to plaintiff’s building were owned, operated and maintained by Con Edison. If the facilities broke down Con Edison not PASNY, NYCHA or plaintiff was obligated to make the necessary repairs.
It is apparent that although Con Edison was not required to generate all the power to be used in the apartment complex it was under an affirmative duty to ensure, that all power generated by whatever source reach the building. By obligating itself to service the building at 1750 Prospect Place Con Edison inextricably involved itself with plaintiff and NYCHA and fully realized that its failure to properly maintain its distribution facilities would adversely affect plaintiff and NYCHA. It is obvious that Con Edison’s conduct has gone forward to such a stage that its failure to act did not merely withhold a benefit from plaintiff and NYCHA but actively worked an injury and created a duty from it to plaintiff and NYCHA and it therefore could be held liable for damages arising from a *1062 breach of its duty. (Moch Co. v Rensselaer Water Co., 247 NY, at p 167.)
iii
To be held liable for injuries sustained by a plaintiff it must be found that defendant breached a duty owed to plaintiff and that that breach was the proximate cause of the injury. It is for the court to determine whether plaintiff has carried its burden of proving that the negligent conduct was a substantial cause of the injury-producing events. Once a prima facie case is established the finder of fact determines the issue of proximate cause. (Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315.) The difficulty of determining if negligent conduct is the proximate cause of an injury is compounded in an action such as this where there exists intervening conduct of third parties. The presence of an intervening force does not necessarily break the causal connection between a defendant’s negligence and plaintiff’s injury. But there are circumstances where the actions of third parties so attenuate the effect of the defendant’s negligence with regard to the accident that a court may decide, as a matter of law, that the intervening conduct is a superseding cause. (Derdiarian v Felix Contr. Corp., supra; Restatement, Torts 2d, § 440.)
The causal link is severed (Derdiarian v Felix Contr. Corp., supra, p 315) “[i]f the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events * * * independent of or far removed from the defendant’s conduct”, or “brings about harm different in kind from that which would otherwise have resulted from the actor’s negligence” (Restatement, Torts 2d, § 442). Con Edison contends that the intervening forces in this case are such that they must be considered superseding not concurrent contributing causes. The injuries, it is argued, resulted from plaintiff’s fall on the stairway made slippery with water spilled by tenants carrying water from a fire hydrant up the dark stairway to their apartments. Moreover, Con Edison claims that because NYCHA had ample opportunity, between the time of the blackout and the accident, to correct the dangerous condition, i.e., clean up the water and provide light, its failure to do so obviated Con Edison’s liability. Examination of each *1063 alleged superseding cause leads to only one correct conclusion, the issue of proximate cause in this case was properly left for determination by the jury.
Under the circumstances of this case the intervening acts of the tenants although independent were not extraordinary and were certainly foreseeable. As a direct result of the blackout the water pumps which operated on electric power and provided the apartments with water for essential needs were not operable. Tenants needing water for drinking and other purposes had to get it from a source other than their sink. Under the conditions it cannot rationally be argued that the transportation of water by tenants, from the street hydrant to their apartments on a hot July day, was extraordinary and unforeseeable. It is also beyond reason to conclude that in negotiating the darkened stairway while holding pots filled with water that water would not be spilled. Furthermore, the harm produced by the spilled water, slippery stairs, was similar to the harm that would have resulted from the blackout. Without light, even if water were not spilled on the steps, tenants walking up and down the stairway had to guess where the next step was and were in constant danger of missing a step, slipping, falling and being injured. The conduct of the tenants flows from the gross negligence of Con Edison and cannot be characterized as a superseding cause. As for the failure of NYCHA to remedy the condition it would be a travesty of justice to consider that failure to act a superseding cause. Even if it were true that NYCHA had notice of the danger, because of the chaos resulting from the blackout it is highly unlikely that NYCHA could have corrected the condition and prevented harm to plaintiff. Based on the foregoing analysis the court cannot as a matter of law say that the conduct of the third parties are superseding causes which relieve Con Edison of liability. The issue of proximate cause was properly submitted to the jury for their determination.
Having found that Con Edison owed a duty to NYCHA and that NYCHA’s conduct was not a superseding cause, Con Edison’s motion for indemnification over NYCHA is denied. Similarly, the evidence in this case does not support the claim that NYCHA is free of any negligence in the *1064 causing of the injury. The jury found some negligence on the part of NYCHA, in such circumstance to grant NY-CHA’s motion for indemnification over Con Edison is improper. Accordingly, NYCHA’s motion for indemnification is denied.
This decision constitutes the findings of fact and law of this court and the clerk is directed to enter judgment in favor of plaintiff in accordance with the jury verdict and this decision.

. Con Edison’s reliance on the example of Professor Currie in support of its position is misplaced. Currie postulates that in a situation involving 50 possible claims arising out of a single accident, if after having a full and fair opportunity to litigate the issues defendant prevailed in individual actions brought by 25 claimants and then lost to the 26th claimant it would be unfair to allow plaintiffs 27 through 50 to assert collateral estoppel and recover damages based on the single favorable determination. (Currie, *1060 Mutuality of Collateral Estoppel: Limits of the Bernard Doctrine, 9 Stan L Rev 281,304.) Even if this court agreed with the Currie analysis the analogy to this case is inapposite, as stated, the prior determinations in this case unlike Currie’s example, were litigated under relaxed and informal procedural rules and as such no anomaly would result by allowing issue preclusion based on the Food Pageant verdict (54 NY2d 167).

. If this case were based on contract theory this court would have to rule in favor of Con Edison and find that there could be no award to either plaintiff or NYCHA. (Moch Co. v Rensselaer Water Co., 247 NY 160; Beck v FMC Corp., 53 AD2d 118; Kraye v Long Is. Light. Co., 42 AD2d 972; Nicholson v City of New York, 271 App Div 899; Shubitz v Con Edison Co. of N. Y., 59 Misc 2d 732.)