JULIUS STRAUSS, Respondent, v BELLE REALTY COMPANY, Defendant, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Appellant.

Second Department, December 27, 1983

APPEARANCES OF COUNSEL

*Ernest J. Williams* (*Cahill Gordon & Reindel* [*William E. Hagarty, Thomas J. Kavaler, Vincent E. Gentile, Lisa Schilit* and *Stanley K. Shapiro*] of counsel), for appellant.

*Rogovin & Golub* (*Benjamin J. Golub* and *Ira H. Goldfarb* of counsel), for respondent.

**OPINION OF THE COURT**

THOMPSON, J.

On July 13, 1977, at approximately 9:30 P.M., millions of customers receiving electricity from defendant Consolidated Edison Company of New York, Inc. (Con Ed), found themselves in the dark when the electric power system serving New York City and Westchester County malfunctioned and ceased operation. Plaintiff Julius Strauss, a tenant in an apartment building owned by defendant Belle Realty Company, was unable to obtain running water in

his apartment because the water was supplied by electric pumps. On the afternoon of July 14, Strauss, believing there was running water in the basement of the building, descended to this common area of the multiple dwelling. It is alleged in his complaint that the darkness (which resulted from Con Ed's gross negligence), as well as the defective condition of the stairs and railings in the basement, caused him to fall and suffer severe injuries. Strauss concedes that he was not a customer of Con Ed in the basement location where the accident occurred. The question presented on this appeal is whether, assuming that the blackout resulted from Con Ed's gross negligence, Strauss' complaint states a viable cause of action against Con Ed either for negligence or as the third-party beneficiary of Con Ed's contract with Belle Realty Company to supply electricity to the common areas of the apartment building. For the reasons set forth herein, we find that the complaint fails to state a cause of action against Con Ed, and its cross motion for summary judgment dismissing the plaintiff's complaint as against it should have been granted.

Following the commencement of this action against Con Ed in March, 1978, Strauss moved in February, 1982 for partial summary judgment on the ground, *inter alia,* that Con Ed was collaterally estopped from contesting the issue of its gross negligence in causing the blackout. Con Ed cross-moved, *inter alia,* for summary judgment dismissing the plaintiff's complaint against it on the ground that its relationship with Strauss with regard to the common areas of the apartment building was such that it did not owe him a duty of care. In opposition to the cross motion, Strauss argued that he was a regular user of the common areas who relied on a constant supply of electricity to those areas and paid rent to a landlord who in turn used part of the rent money to pay for electricity supplied to the common areas. His interest in receiving electricity in the common areas was therefore greater than that of the public generally and was recognized in law. In addition, he asserted that it would be wrong to grant blanket immunity to Con Ed for its gross negligence, and that a public utility was in a position to pass along the cost of any judgment against it to its stockholders or customers in this situation.

Special Term determined that Con Ed was collaterally estopped from litigating the issue of its gross negligence in causing the blackout, and further concluded that Strauss' complaint did state a cause of action. The court reasoned: "The acts of defendant [Con Ed] alleged herein are not mere negligent omissions, but have been found to have been grossly negligent acts and to have resulted in the blackout. The plaintiff herein is not necessarily just one of an indefinite number of potential beneficiaries of defendant's service. Thus, it cannot be said, as a matter of law, that plaintiff is not within the scope of the duty found to be owed by Con Edison".

We hold that that branch of Con Ed's cross motion which sought summary judgment dismissing the plaintiff's complaint as to it should have been granted as a matter of law because no viable theory of recovery against it was stated.

Plaintiff's complaint and papers in opposition to Con Ed's cross motion for summary judgment fail to raise any factual issue as to whether he was an intended third-party beneficiary of Con Ed's contract with Belle Realty Company to supply electricity to the common areas of the apartment building. The case of *Airco Alloys Div. v Niagara Mohawk Power Corp.* (76 AD2d 68, 79) contains the following succinct summary of the basic principles governing the law of third-party beneficiaries: "A third party may sue as a beneficiary on a contract made for his benefit (*Lawrence v Fox*, 20 NY 268). The intent to benefit a third party must be shown (*Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652; *Beveridge v New York El. R. R. Co.,* 112 NY 1) and the benefit must not be merely incidental but immediate to such a degree as to indicate the assumption of a duty to make reparation if the benefit is lost (*Associated Flour Haulers & Warehousemen v Hoffman,* 282 NY 173; *Moch Co. v Rensselaer Water Co.,* 247 NY 160). Absent such intent, the third party is merely an incidental beneficiary with no right to enforce the contract (*Port Chester Elec. Constr. Corp. v Atlas, supra; Associated Flour Haulers & Warehousemen v Hoffman, supra; Moch Co. v Rensselaer Water Co., supra; Flemington Nat. Bank & Trust Co. [N.A.] v Domler Leasing Corp.,* 65 AD2d 29). An incidental beneficiary is a third party who may derive

benefit from the performance of a contract though he is neither the promisee nor the one to whom performance is to be rendered (2 Williston, Contracts [3d ed], § 402). While it is not necessary that a third-party beneficiary be identified or even identifiable at the time that the contract is made, he has no right to enforce the contract himself until such time as he is identified (*Matter of Associated Teachers of Huntington v Board of Educ.,* 33 NY2d 229). A party, claiming to be a third-party beneficiary, has the burden of demonstrating that he has an enforceable right (*Flemington Nat. Bank & Trust Co. [N.A.] v Domler Leasing Corp., supra*)."

Even when the contracting parties specifically intend to confer benefits on a third party, not all consequential damages which flow from a breach of the contract are recoverable by the third party. The contract must evince a discernible intent to allow recovery for the specific damages to the third party that result from a breach thereof before a cause of action is stated (*Kornblut v Chevron Oil Co.,* 62 AD2d 831, affd 48 NY2d 853). Furthermore, "[a]n intention to assume an obligation of indefinite extension to every member of the public is seen to be the more improbable when we recall the crushing burden that the obligation would impose (cf. *Hone* v. *Presque Isle Water Co.,* 104 Me. 217, at 232)" (*Moch Co. v Rensselaer Water Co.,* 247 NY 160, 165).

Plaintiff has failed to carry his burden of demonstrating that he has an enforceable right. He offers nothing to show that Con Ed and Belle Realty Company intended to allow him to recover for the damages resulting from his entrance into the darkened common areas. That plaintiff relied on a flow of electricity to the common areas and that the landlord may have used the rental income from plaintiff's apartment to pay the landlord's electricity bill, fail to create rights greater than those applicable to the general public. As stated in *Moch Co. v Rensselaer Water Co.* (*supra,* p 166): "A promisor will not be deemed to have had in mind the assumption of a risk so overwhelming for any trivial reward." In *Shubitz v Consolidated Edison Co.* (59 Misc 2d 732, 734) the court observed that "[t]o hold to the contrary would introduce new parties with new rights and

would subject the defendant to a multitude of suits for damages that could not have been intended or in the contemplation of the parties at the time the contract was made." With regard to the 1977 blackout, it has been concluded that "[t]o rule otherwise would extend the consequences of a blackout ad infinitum. Such a result is neither warranted nor reasonable" (*Crane v City of New York*, NYLJ, Aug. 9, 1982, p 12, col 6; p 13, col 1). Claims similar to that presented herein have consistently been dismissed (*Moch Co. v Rensselaer Water Co., supra; Beck v FMC Corp.*, 53 AD2d 118, affd 42 NY2d 1027; *Nicholson v City of New York*, 271 App Div 899, affd 297 NY 548; *Kraye v Long Is. Light. Co.*, 42 AD2d 972; *Shubitz v Consolidated Edison Co., supra; Crane v City of New York, supra*).

The case of *Koch v Consolidated Edison Co.* (NYLJ, June 16, 1982, p 6, col 4), involving a third-party beneficiary action, is readily distinguishable. In *Koch* the court relied on specific contractual and statutory language to conclude that specified governmental agencies came within a definable class of beneficiaries to whom a duty was owed. Such specific language is not present in this case.

The complaint also fails to state a cause of action in negligence because Con Ed did not owe a duty to plaintiff in any compensable legal sense (*Moch Co. v Rensselaer Water Co.*, 247 NY 160, *supra*). That Con Ed may have been grossly negligent is not relevant in defining the scope of its duty to supply electric power, but only in determining the consequences which result from the breach of a duty owed. "Without duty, there can be no breach of duty, and without breach of duty there can be no liability" (*Williams v State of New York*, 308 NY 548, 557).

It is true that the injury suffered by plaintiff was to some degree foreseeable, and that "[t]he risk reasonably to be perceived defines the duty to be obeyed" (*Palsgraf v Long Is. R. R. Co.*, 248 NY 339, 344). This, however, does not suffice to create a duty. "Foreseeability should not be confused with duty" (*Pulka v Edelman*, 40 NY2d 781, 785). "[T]he foreseeability factor is not determinative of the issue" (*Beck v FMC Corp., supra*, p 121). Were foreseeability the sole factor in determining the duty owed, "[i]t would extend endlessly, like the rippling of the waters * * * to all

who suffered injury or economic loss caused by the absence of electrical power" (*Beck v FMC Corp., supra,* p 121). "Mere foreseeability without relation cannot suffice" (*Cullen v BMW of North Amer.,* 531 F Supp 555, 563).

It is unfortunate that a plaintiff's remedies must be restricted in situations where a foreseeable injury has resulted from negligent conduct, but compensation is not necessarily available for every wrong. As a practical matter, legal consequences must be limited to a controllable degree (*Beck v FMC Corp., supra,* p 122). An injured party's right to recover is thus limited in a situation where a reasonable opportunity to reduce the risk of a foreseeable injury is lacking (*Cullen v BMW of North Amer., supra,* p 563). Accordingly, plaintiff has not stated a cause of action against Con Ed in negligence. *Hall v Consolidated Edison Corp.* (104 Misc 2d 565) is not to the contrary. In *Hall* there was a purposeful and intentional cut off of electrical power to one specific building. Our situation involves, at most, grossly negligent conduct affecting millions of people.

Plaintiff's argument that Con Ed is in a position to compensate all those injured as a consequence of the blackout by adjusting its rates for all who use its services is best addressed to the Legislature. The law is not in the field of insurance (*Shubitz v Consolidated Edison Co.,* 59 Misc 2d 732, 736, *supra*), and it is not the role of the judiciary to place a public utility in that field. The numerous viable actions which have resulted from the blackout demonstrate that Con Ed has not received blanket immunity to run its business in a haphazard fashion. The reasonable limitations that have evolved in restricting the rights of recovery must be applied, however, and in this instance they mandate a dismissal of the complaint as against Con Ed.

Accordingly, the order under review should be reversed insofar as appealed from, on the law, without costs or disbursements, the cross motion of defendant Con Ed should be granted and plaintiff's complaint should be dismissed as against it.

GIBBONS, J. (dissenting). This action is yet another arising out of the 1977 New York City blackout (see *Food Pageant v Consolidated Edison Co.,* 54 NY2d 167). The

blackout started during the evening of July 13, 1977. Plaintiff and his wife, both 77 years of age when the blackout occurred, lived in an apartment building in Queens County owned by defendant Belle Realty Company (Belle Realty). According to plaintiff, water to their apartment was supplied by electrical pumps, and as a consequence of the electrical failure their apartment was without running water. With the blackout continuing into the following day, July 14, 1977, the situation became quite difficult. On the afternoon of July 14, plaintiff was allegedly told by someone that there was running water in the basement of the building. Acting on this information, plaintiff allegedly went down to the basement where, as he was descending the darkened basement stairs, he slipped and fell, thereby suffering various personal injuries.

Plaintiff brought suit against both Belle Realty and Consolidated Edison Company of New York, Inc. (Con Ed). The complaint, which sounds in tort, alleges that the fall was caused by the "failure to provide electric current and electric power", which resulted in the plaintiff "enter[ing] into and upon the basement" and, further, by a "dangerous and defective condition" existing in the basement. It is clear from the record that, by the phrase "dangerous and defective condition", plaintiff is referring, at least in part, to the absence of light which would have illuminated the basement stairs.

Plaintiff moved for partial summary judgment against Con Ed (1) to preclude it from litigating the question of whether the blackout was due to its gross negligence, and (2) to establish "that the defendant Consolidated Edison owed a duty of care to [the plaintiff]". Con Ed cross-moved for, among other things, summary judgment in its favor dismissing plaintiff's complaint as to it, on the ground that it did not owe a duty of care to him. Special Term granted plaintiff's motion to the extent that it held that "Con Edison is estopped from relitigating the issue of its gross negligence in relation to the occurrence of the blackout". The court denied the rest of plaintiff's motion, as well as that portion of Con Ed's cross motion which sought dismissal of the complaint against it, stating that "[w]hether the plaintiff herein is, under the facts and circumstances of

this case, within the sphere of persons to whom defendant Con Edison is liable for breach of its duty to exercise at least slight care in providing and maintaining uninterrupted electrical service is a question of fact which remains to be determined at trial". Con Ed has appealed from those portions of the order of Special Term which precluded it from litigating the issue of gross negligence and which denied its cross motion for summary judgment dismissing the complaint as to it.

The question of whether the blackout was caused by Con Ed's gross negligence was decided adversely to Con Ed in the case of *Food Pageant v Consolidated Edison Co.* (54 NY2d 167, *supra*). That factual determination is entitled to collateral estoppel effect in this case (see *Shaid v Consolidated Edison Co.,* 95 AD2d 610; *Goldstein v Consolidated Edison Co.,* 93 AD2d 589), provided it is first established that Con Ed owed a duty to plaintiff (*Pulka v Edelman,* 40 NY2d 781, 782). The focus of this appeal is, thus, necessarily on the duty question.

The term "duty", in the negligence context, involves "the relation between individuals which imposes upon one a legal obligation for the benefit of the other" (Prosser, Torts [4th ed], p 324; see *Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 341-342). "[It] is essentially a legal term by which we express our conclusion that there can be liability * * * It tells us whether the risk to which one person exposes another is within the protection of the law. In fixing the bounds of that duty, not only logic and science, but policy play an important role" (*De Angelis v Lutheran Med. Center,* 58 NY2d 1053, 1055; see *Donohue v Copiague Union Free School Dist.,* 64 AD2d 29, 33, affd 47 NY2d 440).

Foreseeability is generally, although not necessarily, an important factor in determining the existence of a duty (*Havas v Victory Paper Stock Co.,* 49 NY2d 381, 385-386; see *Pulka v Edelman, supra*). No one seriously disputes that plaintiff's injury was foreseeable. It is certainly not unreasonable that an apartment dweller, not having any running water during the blackout, would eventually venture out in search of some. It is also not unexpected that a darkened stairway is a dangerous condition which can very

possibly lead to the sort of mishap that apparently· happened here.

The majority suggests that a duty is absent because, among other things, "a reasonable opportunity to reduce the risk of a foreseeable injury is lacking". Such is not the case. It certainly is true that the ability to adopt practical means to avoid injury is an aspect of the question of duty (*Donohue v Copiague Union Free School Dist., supra,* p 33). However, from the facts and circumstances surrounding the happening of the blackout, as described in *Food Pageant v Consolidated Edison Co.* (54 NY2d 167, 173-174, *supra*), there can be no doubt that Con Ed could have fairly easily prevented the blackout from occurring. The imposition of a duty on Con Ed is not a demand to do the impossible. Rather, it is merely a requirement that the utility exercise, at least, slight care in its operations (see *Food Pageant v Consolidated Edison Co., supra,* p 172).

Con Ed's main argument is that since plaintiff concedes that he fell in a location where light was to be provided pursuant to a contract between Con Ed and Belle Realty, it had no duty *with respect to him* to provide light for the basement stairs. In essence, Con Ed equates the question of duty in negligence with that of privity in contract. My colleagues in the majority employ this equation by discussing at length whether or not plaintiff was an intended or incidental beneficiary of the contract for electricity between Belle Realty and Con Ed. The fact is that this is not a contract action at all. There is nothing in the complaint which would indicate that plaintiff is attempting to sue in contract as an intended third-party beneficiary. This is a tort suit pure and simple.

Understanding the difference between tort and contract is essential to the resolution of this appeal. "Tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties. They may be owed to all those within the range of harm, or to some considerable class of people. Contract actions are created to protect the interest in having promises performed. Contract obligations are im-

posed because of conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract" (Prosser, Torts [4th ed], p 613). With these differing perspectives in mind, it is apparent that the distinction between intended and incidental third-party beneficiaries, which is so important in a suit in contract (see, e.g., *Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652), is not particularly helpful, if at all, in the tort context (see *White v Guarente,* 43 NY2d 356, 360-363; *Ultramares Corp. v Touche,* 255 NY 170, 180-181). The question is not whether the parties to the contract contemplated that a third party would benefit from the agreement and would be able to seek reparation if the benefit were lost, which is the test in contract law for intended third-party beneficiary status (see *Airco Alloys Div. v Niagara Mohawk Power Corp.,* 76 AD2d 68, 79). Rather, the question is whether the plaintiff is within the class of persons which, largely for policy reasons, the law will protect by obliging the defendant to conform his conduct to a certain standard of care (see *White v Guarente, supra*).

Professor Prosser has observed that the notion of contract privity has been used by the courts to deny tort liability, contrary to the analytical distinction between tort and contract, because of "the fear of burdening the defendants with a crushing responsibility" (Prosser, Torts [4th ed], p 623). A fear of imposing unlimited liability on a party is indeed an appropriate judicial concern and properly is a factor to be reckoned with in determining the existence of a duty of care (*Tobin v Grossman,* 24 NY2d 609). However, there is no reason to resort to theories of privity, which are outmoded in the negligence context, in order to express this concern or to delimit the boundaries of that relationship known in the law of torts as "duty" (see *White v Guarente, supra,* pp 361-362; *Codling v Paglia,* 32 NY2d 330; *MacPherson v Buick Motor Co.,* 217 NY 382). Unlike municipal defendants, which are not liable for negligence absent a "special relationship" with the plaintiff, a private corporation, such as Con Ed, is not entitled to a cloak of immunity in a case such as this (see *O'Connor v City of New York,* 58 NY2d 184, 187; see, also, *Basso v Miller,* 40 NY2d 233).

This is not to say that the existence of a contract is irrelevant to a determination of duty. A contract may create a relation from which is derived a duty, distinct from the contract obligation (*Rich v New York Cent. & Hudson Riv. R. R. Co.,* 87 NY 382). Furthermore, "[w]here a person contracts to do certain work he is charged with the common-law duty of exercising reasonable care and skill in the performance of the work required to be done by the contract" (*Rosenbaum v Branster Realty Corp.,* 276 App Div 167, 168). However, generally, failure to perform at all under a contract, or nonfeasance, is merely a breach of contract. For there to be liability in tort, there must, at least, be partial performance, with that performance being negligent or, in this case, grossly negligent (see *Albemarle Theatre v Bayberry Realty Corp.,* 27 AD2d 172; *Wroblewski v Otis Elevator Co.,* 9 AD2d 294; *Rosenbaum v Branster Realty Corp., supra*). Applied to cases against electrical companies, these principles lead to the conclusion that a customer of the utility may sue in either contract or tort where there has been an improper termination of service (see, generally, Electricity — Interruption of Power, Ann., 4 ALR3d 594). The standard for liability is that of gross negligence (*Weld v Postal Tel. Cable Co.,* 210 NY 59).

It has already been pointed out that the absence of privity and intended third-party beneficiary status is not an automatic bar to the imposition of a tort duty. As the Court of Appeals declared in *White v Guarente* (43 NY2d 356, 363, *supra,* quoting with approval from *Rosenbaum v Branster Realty Corp.,* 276 App Div 167, 168, *supra*), " '[t]he [tort] duty of reasonable care in the performance of a contract is not always owed solely to the person with whom the contract is made * * * It may inure to the benefit of others' ". Guidance for determining when such a duty lies may be found in several of the cases, some of which involve actions by tenants.

In *Rosenbaum (supra),* the plaintiffs were tenants seeking damages against their landlord and a refrigeration service company. Apparently the refrigeration service company had a contract with the landlord to maintain the refrigerator in the plaintiffs' apartment. The company failed to service the refrigerator at all, with the result that,

allegedly, sulphur dioxide fumes escaped therefrom, causing personal injuries. The Appellate Division, First Department, held that "[b]y virtue of the nature of the contract between appellants [refrigeration service] and the owner [landlord], the legal duty of reasonably careful and skillful performance imposed upon appellants inured to the benefit of plaintiffs" (*Rosenbaum v Branster Realty Corp.*, 276 App Div 167, 168, *supra*). However, because there was a complete failure of performance by the service company, or nonfeasance, a tort action would not lie, and, accordingly, the complaint was dismissed as to the service company.

In *White v Guarente* (43 NY2d 356, 363, *supra*), the Court of Appeals also cited with approval the case of *Wroblewski v Otis Elevator Co.* (9 AD2d 294, *supra*). *Wroblewski* is one of many cases involving accidents in elevators, where the question of duty often comes up. The rule is well settled that an elevator company which agrees to service an elevator may be liable in tort to tenants who are injured while riding the elevator, provided it is shown that there is negligent performance by the elevator company of its obligation under the contract (*Kelly v Watson Elevator Co.*, 309 NY 49; *Beinhocker v Barnes Dev. Corp.*, 296 NY 925; *Wisner v Harmas Holding Corp.*, 1 AD2d 957).

The case of *Fish v Waverly Elec. Light & Power Co.* (189 NY 336) is also instructive. There the defendant electrical utility contracted with a store to install certain light fixtures. One such fixture fell from the store ceiling, injuring an employee. The Court of Appeals held that the utility owed a duty to the employee, despite the lack of privity.

It might be suggested that the cases discussed above do not support the finding of a duty in this case, because in causing the blackout, Con Ed was, at most, guilty of nonfeasance, rather than malfeasance, and that, therefore, tort liability should not lie, even as to Con Ed customers. As indicated above, despite privity of contract, as existed here between Con Ed and Belle Realty with respect to the stairway lighting, a complete failure of performance of the obligations entailed by a contract may result only in a contract claim and not in a tort action (*Rosenbaum v Branster Realty Corp., supra*). This is but a corollary of the

more general proposition that tort law does not generally recognize liability for mere nonfeasance (*Moch Co. v Rensselaer Water Co.,* 247 NY 160, 167-168; see, generally, Prosser, Torts [4th ed], § 56). Traditionally, it is not the role of the law of torts to compel conduct but rather to control it once it is initiated (see Green, The Duty Problem in Negligence Cases, 28 Col L Rev 1014, 1027). Any issue of nonfeasance versus malfeasance in this case is, however, laid to rest by *Food Pageant v Consolidated Edison Co.* (*supra*). The verdict of liability in that case, which was upheld by the Court of Appeals, presupposes that Con Ed was guilty of more than mere nonfeasance. More specifically, the failure of Con Ed's system operator to "shed load" when directed to do so was clearly malfeasance (*Food Pageant v Consolidated Edison Co.,* 54 NY2d 167, 173-174, *supra;* see *Kelly v Metropolitan Ry. Co.,* 1 QB 944 [1895], cited with approval in *Moch Co. v Rensselaer Water Co., supra,* p 167). It follows, therefore, that if the plaintiff in the case at bar had been the owner of the building, there would be no question concerning the existence of a duty in tort. Significantly, Con Ed does not argue to the contrary.

If this were a suit involving fumes from a refrigerator, or an elevator accident, or falling light fixtures, plaintiff, as a tenant, would have a viable claim against any entity which had contracted with plaintiff's landlord to maintain the refrigerator, elevator, or light fixture, as the case may be. If plaintiff's fall had been occasioned by defective workmanship by a carpenter who had repaired the stairway at the behest of the landlord, there is no doubt but that suit against the carpenter would lie. I fail to perceive any significant difference between such circumstances and the situation presented here, where defendant Con Ed had contracted with the landlord to provide electricity to the common areas of the building and had, through its malfeasance and gross negligence, caused the electrical service to be terminated.

My colleagues in the majority apparently find a significant distinction in that the imposition of a duty on Con Ed in a case such as this would extend its liability to an intolerable degree. I disagree.

This is not a case where to impose a duty would be to make the defendant responsible to an indefinite and un-

limited group of people (cf. *Moch Co. v Rensselaer Water Co.*, 247 NY 160, 168-169, *supra*). The instant case involves a tenant who himself had an agreement with Con Ed for the provision of electricity to his apartment. The tenants of the building in question constitute a defined, limited and known group of people. When Belle Realty and Con Ed agreed to the provision of electricity to the common areas of the building, Con Ed presumably was aware that Belle Realty's tenants would be using these areas regularly and would rely on the services of Con Ed.

I would suggest that the circumstances found here are akin to those in *White v Guarente* (43 NY2d 356, *supra*). That case involved a cause of action in malpractice, brought by a limited partner in a firm against the firm's accountant. The accounting company, relying on *Ultramares Corp. v Touche* (255 NY 170, *supra*), argued that it did not owe a duty to the plaintiff since, allegedly, an accountant is not responsible to everyone who might rely on his or her reports, but only to those with whom he or she is in privity. The Court of Appeals held that *Ultramares* "presented a noticeably different picture" because in *White:* "the services of the accountant were not extended to a faceless or unresolved class of persons, but rather to a known group possessed of vested rights, marked by a definable limit and made up of certain components (see *Ultramares Corp. v Touche,* 255 NY 170, 182-185, *supra*). The instant situation did not involve prospective limited partners, unknown at the time and who might be induced to join, but rather actual limited partners, fixed and determined. Here, accountant Andersen was retained to perform an audit and prepare the tax returns of Associates, known to be a limited partnership, and the accountant must have been aware that a limited partner would necessarily rely on or make use of the audit and tax returns of the partnership, or at least constituents of them, in order to properly prepare his or her own tax returns. This was within the contemplation of the parties to the accounting retainer. In such circumstances, assumption of the task of auditing and preparing the returns was the assumption of a duty to audit and prepare carefully for the benefit of those in the fixed, definable and contemplated group whose

conduct was to be governed, since, given the contract and the relation, the duty is imposed by law and it is not necessary to state the duty in terms of contract or privity (cf. *Glanzer v Shepard,* 233 NY 236, 239; see, also, *Scholen v Guaranty Trust Co. of N. Y.,* 288 NY 249, 253; 1 Harper and James, Torts, § 7.6, p 546)" (*White v Guarente, supra,* pp 361-362; see, also, *Florence v Goldberg,* 44 NY2d 189, 195-197).

It is true that, on first blush, the class of persons such as plaintiff appears very large. After all, there are presumably millions of tenants in New York City, and the blackout was city-wide. The very size of the blackout and the large number of persons and businesses affected is obviously of great concern to my colleagues. That is, however, not the point. While in dollars and cents, Con Ed's potential liability is enormous, that is no reason to arbitrarily prevent persons from having the opportunity of recovery for foreseeable injury, when those persons are members of a circumscribed, defined class which has as close a relationship with Con Ed as the plaintiff in this case (see *Bing v Thunig,* 2 NY2d 656, 664). The issue here is whether a tenant can claim in tort that an electrical company, which has contracted with his or her landlord to provide electricity to the common areas of the apartment building, owes him or her a duty not to cause electrical service to be terminated by its gross negligence. That is the sole issue, whether one building is blacked out or an entire city. When looked at from this perspective, it is obvious that holding that there is a duty does not impose unlimited liability on the utility.

The majority states that "[t]he law is not in the field of insurance * * * and it is not the role of the judiciary to place a public utility in that field". Plaintiff is not arguing that Con Ed should be held to liability like an insurer. No one is claiming that liability should be imposed irrespective of fault, as with an insurance company. Fault has already been established, by dint of *Food Pageant v Consolidated Edison Co.* (54 NY2d 167, *supra*). What plaintiff is maintaining, a proposition with which I agree, is that he is within one of the classes of persons to whom Con Ed owes a duty to make reparations for injuries suffered as a result of

its gross negligence. That class, made up, among others, of tenants injured as was the plaintiff, is foreseeable, is limited in size, is defined, and consists of persons who Con Ed must be presumed to have contemplated would rely on its service on a regular basis. In such circumstances, I can perceive of no public policy justification for excusing Con Ed from liability on the alleged basis that plaintiff was not a member of a class to whom Con Ed owed a duty of care.

To hold otherwise, results in a very anomalous situation. For example, if plaintiff fell in his darkened apartment, a duty would be found, because he himself paid the electric bill to Con Ed. What sense does it make to say that when he, quite foreseeably, steps outside his apartment door into the common areas of his building, a duty does not exist? And what about his landlord? If an employee of Belle Realty was injured in the hallway outside plaintiff's apartment, there would be no question that there was a duty. Yet, the holding of the majority would result in the absence of a duty were the employee to step into plaintiff's apartment and then fall. It is interesting to note that while both *Shaid v Consolidated Edison Co.* (95 AD2d 610, *supra*) and *Goldstein v Consolidated Edison Co.* (93 AD2d 589, *supra*) are suits involving falls on darkened stairways, the question of duty was not brought up on the appellate level in either case. In the *Goldstein* case, the plaintiffs were shareholders in the co-operatively owned apartment building in which the fall occurred (see *Goldstein v Consolidated Edison Co., supra,* p 590), while in *Shaid* the accident occurred in a two-family house owned by a relative of the plaintiff. Apparently, Con Ed views its relation to the plaintiffs in *Shaid* and *Goldstein* differently from the relation that exists here. Yet, what is the difference? From a policy point of view, there is none. Even from a contract point of view, which Con Ed utilizes, there appears to be no difference, since privity is lacking in both the circumstances of *Shaid* and that of *Goldstein*.

Strangely enough, very few courts have examined the specific issues that are involved in this case. Two appellate cases, *Nicholson v City of New York* (297 NY 548) and *Kraye v Long Is. Light. Co.* (42 AD2d 972), are clearly not on point, because the plaintiffs there were members of the

general public and not members of a specific, circumscribed class. The case of *Beck v FMC Corp.* (53 AD2d 118, affd 42 NY2d 1027) is also not apropos, in that there the utility was, at most, guilty of nonfeasance; there was no allegation of an affirmative act of negligence. Furthermore, as the Appellate Division, Fourth Department, noted, the plaintiffs in *Beck* were claiming lost wages "independent of direct physical injury" (*Beck v FMC Corp., supra,* p 121). Physical injury is the claim in this case.

There is one decision that runs counter to my position and that is *Shubitz v Consolidated Edison Co.* (59 Misc 2d 732). However, the decision in that case does not discuss the possibility of a tort duty towards third parties arising out of the negligent performance of a contract obligation. There are three reported cases which support the finding of a duty in this case (*Hall v Consolidated Edison Corp.,* 104 Misc 2d 565; *Perez v New York City Housing Auth.,* 114 Misc 2d 1055; *Milizia v Consolidated Edison Co.,* 95 Misc 2d 358). The majority attempts to distinguish *Hall* on the ground that "[i]n *Hall* there was a purposeful and intentional cut off of electric power to one specific building". It has already been shown that whether one building or a million buildings are affected, the issue of duty is the same. That the cut off in *Hall* was intentional is irrelevant. It was a suit based in negligence and gross negligence, the allegation being that cutting off the electricity in the common areas of the plaintiff's building was a grossly negligent act with respect to plaintiff, a tenant in the building. It was not an action for an intentional tort. *Perez* (*supra*), a suit also stemming from the 1977 blackout, is clearly indistinguishable, as is *Milizia* (*supra*).

Whether an undisputed relationship creates a duty is a matter of law to be passed upon by the court (*De Angelis v Lutheran Med. Center,* 58 NY2d 1053, 1055, *supra;* Prosser, Torts [4th ed], p 206; 2 Harper and James, Law of Torts, pp 1058-1059). There is nothing in the record which would indicate the necessity of a postponement of a judicial declaration concerning the existence of a duty. Accordingly, I conclude that, in the circumstances presented, Con Ed did owe plaintiff a duty with respect to the lighting in the common areas of his building. The order being ap-

pealed from should be modified by searching the record on Con Ed's cross motion for summary judgment, thereupon granting partial summary judgment to plaintiff against Con Ed on the issue of liability, and the matter should be remitted to the Supreme Court, Queens County, for a trial, limited solely to issues of comparative negligence, apportionment of liability, and damages.

BOYERS, J., concurs in opinion of THOMPSON, J.; DAMIANI, J. P., concurs in result; GIBBONS, J., dissents and votes to modify the order insofar as appealed from by searching the record on appellant's cross motion for summary judgment, thereupon granting partial summary judgment to plaintiff against appellant on the issue of liability and remitting the matter to the Supreme Court, Queens County, for a trial limited solely to the issues of comparative negligence, apportionment of liability, and damages.

Order of the Supreme Court, Queens County, dated July 6, 1982, reversed insofar as appealed from, without costs or disbursements, appellant's cross motion for summary judgment granted and complaint dismissed as against defendant Consolidated Edison Company of New York, Inc.